Opinion issued July 22, 2010

                                                                        

 

 

 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of
Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00126-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



ANNA LIZA N. CRISTOBAL, Appellant

 

V.

 

FREDRICK SCOTT ALLEN, Appellee

 

 



On Appeal from the County Civil Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 856856

 

 



MEMORANDUM OPINION

          Anna
Cristobal sued Fredrick Allen, her former fiancé, seeking the return of $52,000
and recompense for about $33,000 worth of his credit card debt.  Allen denied that these monies were loans that
he owed her.  After Allen stopped paying on
the credit cards and refused to pay her demand, Cristobal sued him for breach
of contract, quantum meruit, and unjust enrichment.

The jury believed Allen, finding that
Cristobal did not loan him the money.  Accordingly,
the trial court entered a take-nothing judgment against Cristobal.  On appeal, Cristobal contends that:  (1) the trial court erroneously admitted
irrelevant and prejudicial e-mail excerpts; (2) the jury’s findings are against
the great weight and preponderance of the evidence; and (3) the trial court
erroneously refused to submit jury questions on Cristobal’s claims of quantum
meruit and unjust enrichment.  Finding no
error, we affirm.

Background

Cristobal and Allen met while on vacation
in Cabo San Lucas in 2002.  After
returning to the United States, they kept in touch and eventually began a long-distance
romantic relationship.  Shortly
thereafter, Cristobal and Allen engaged to marry, and Cristobal moved to
Houston from New Jersey.  Allen added
Cristobal to his checking account, set up direct deposit for her wages, and
gave her full power to deposit and withdraw funds from the account.

Cristobal testified that she and
Allen, while they were engaged, entered into two financial agreements.  They first agreed that Cristobal would loan
Allen money to pay off his debts so he could lower his interest rate, improve
his credit score, and use the savings to purchase a house.  Cristobal wrote four checks to Allen,
totaling $52,000, which he deposited into their joint account.  According to Cristobal, Allen promised that
he would pay her back as soon as he could. 
Under the second agreement, Cristobal opened credit card accounts in her
name and transferred some of Allen’s credit card debts to the new accounts to
take advantage of Cristobal’s good credit score and lower interest rates.  Allen allegedly promised that, although the
cards were in Cristobal’s name, he would continue to pay on the debts.  Cristobal transferred $52,680 worth of Allen’s
credit card debt to these new cards.  Although
Allen made some payments on these cards, even after the relationship ended, he
did not pay off the entire balance.  Cristobal
sought recovery of $33,329.70, the balance that she paid on the accounts.  Cristobal acknowledged that Allen never conceded
that a contractual relationship existed between them; however, when he asked to
borrow money and transfer his credit card debt, he promised to repay the amounts.

In contrast, Allen testified that
Cristobal suggested opening a new credit card account with a lower interest
rate and transferring Allen’s balance to that card to save money.  According to Allen, he and Cristobal never
discussed repayment of any funds.  The
parties anticipated being married in the future.  When they discussed finances, Cristobal never
told Allen that she would write a check or transfer his credit card debt only
if he later repaid her.  Similarly, Allen
did not ask Cristobal to repay him when he transferred his money into their
joint checking account.  Allen made the
payments on the credit cards after the relationship ended not out of a
contractual obligation, but because he cared for Cristobal and wanted to help
her buy a house in New Jersey.  Allen
estimated that he had paid over $43,000 toward the various credit card
balances.

The couple traveled frequently.  They flew to New Jersey monthly, went on
several cruises, and vacationed in Hawaii on two separate occasions.  Allen testified that the couple jointly
purchased clothes, jewelry, and food. 
Cristobal conceded that she had benefited from charges to Allen’s credit
cards before she transferred his balance to her cards.

On appeal, the parties dispute an
evidentiary ruling.  During Allen’s
direct examination, Cristobal’s counsel read excerpts from Allen’s e-mails to
Cristobal and asked him whether he made those statements.  After Cristobal’s counsel read the first
excerpt, Allen asked that the trial court admit the entire e-mail into
evidence.  The trial court overruled this
objection.  At the end of Allen’s
direct-examination, the trial court reconsidered, and it allowed the jury to
consider the entirety of the e-mails.  Although
the full version of the e-mails contained allegations of infidelity and other
matters irrelevant to the parties’ financial arrangements or the existence of a
contract, Cristobal did not object.

On cross-examination, when Allen’s
counsel began to question Allen about the e-mails, Cristobal’s counsel objected:

Cristobal:    Your Honor, I guess for the record let me object.  [The e-mails] have not been entered into
evidence.  All I did was confirm whether
or not this witness made statements, and he did confirm them.  So, you know, object to any use of the
e-mails—

 

The Court:  Overruled.  I think under the rule of optional completeness
it was very clear you were reading from them, and he gets them in.

 

Allen’s counsel next asked which
party had ended the relationship. 
Cristobal objected to Allen’s question on relevancy grounds, and the
trial court sustained this objection.  Allen
then offered, and the trial court admitted, the full versions of the e-mails without
objection by Cristobal.

          Cristobal
requested jury questions relating to her quantum meruit and unjust enrichment
claims.  The trial court refused to
submit these questions, and instead limited the jury questions to Cristobal’s
breach of contract claim.  The jury found
that (1) Cristobal did not loan the money to Allen, and (2) Allen did not
agree to pay all of the charges transferred to Cristobal’s credit cards.  The trial court rendered a take-nothing
judgment against Cristobal.

Discussion

Admission of Evidence

          Cristobal
first contends that the trial court erred in admitting the portions of the e-mails
that contain irrelevant and prejudicial information concerning Cristobal’s
alleged infidelity.  We review a trial
court’s decision to admit or exclude evidence for an abuse of discretion.  Bay Area Healthcare Group, Ltd. v. McShane, 239 S.W.3d 231, 234
(Tex. 2007) (per curiam).

          To
preserve error for appellate review, the complaining party must timely object at
trial and state the grounds for the objection with sufficient specificity to
make the trial court aware of the complaint, unless the specific grounds are
apparent from the context.  Tex. R. App. P. 33.1(a)(1)(A); see also Tex. R. Evid. 103(a)(1).  A party’s trial objection must comport with
the argument raised on appeal.  J.C. Penney Life Ins. Co. v. Heinrich,
32 S.W.3d 280, 290 (Tex. App.—San Antonio 2000, pet. denied) (citing Samco Props., Inc. v. Cheatham, 977 S.W.2d
469, 478–79 (Tex. App.—Houston [14th Dist.] 1998, pet. denied)); Jurek v. Couch-Jurek, 296 S.W.3d 864,
869 (Tex. App.—El Paso 2009, no pet.).  The
complaining party waives error in the admission of evidence if she allows the
evidence to be introduced during the trial without objection.  McShane, 239 S.W.3d at 235; Volkswagen
of Am., Inc. v. Ramirez, 159 S.W.3d 897, 907 (Tex. 2004).

          Cristobal
filed a pre-trial motion in limine requesting that the trial court require
Allen to obtain a ruling outside the presence of the jury on the admissibility
of evidence relating to the parties’ romantic relationship on the ground that
this information is “not relevant to the monetary issues” of the case.  The trial court admitted the entire e-mails,
however, Cristobal never objected to the offer or to the admission of the full
e-mails, nor did she inform the trial court that allowing Allen to introduce
statements from the e-mails that did not relate to the subject matter of the
excerpts Cristobal had read to the jury—about Allen’s alleged promise to repay
Cristobal—did not satisfy the requirements of the rule of optional completeness.  See
Tex. R. Evid. 107 (“When part of
an act, declaration, conversation, writing or recorded statement is given in
evidence by one party, the whole on the same subject may be inquired into by
the other . . . .”); Crosby
v. Minyard Food Stores, Inc., 122 S.W.3d 899, 903 (Tex. App.—Dallas 2003,
no pet.) (stating requirements for admission of
evidence pursuant to rule of optional completeness).  Accordingly, we hold that Cristobal did not
preserve her contention that the trial court erred in admitting the e-mails for
appellate review.

Factual Sufficiency

          Cristobal
next contends that the jury’s findings are against the great weight and preponderance
of the evidence.  She observes that Allen
failed to refute the evidence of (1) his promises of repayment, (2) the
transfer of his credit card debt to Cristobal’s credit cards, and (3) his
failure to repay the debt.  When a party
challenges an adverse finding on which it had the burden of proof at trial, the
party must demonstrate that the jury’s finding is against the great weight and
preponderance of the evidence.  Dow Chem. Co. v. Francis,
46 S.W.3d 237, 242 (Tex. 2001); Grider v.
Mike O’Brien, P.C., 260 S.W.3d 49, 57 (Tex. App.—Houston [1st Dist.] 2008,
pet. denied).  We consider all of
the evidence in a neutral light, and we set aside the verdict only if the
evidence is so weak or if the finding is so against the great weight and
preponderance of the evidence such that it is clearly wrong and unjust.  See
Francis, 46 S.W.3d at 242.  The jury is the sole judge of the witnesses’
credibility and the weight to be given their testimony.  Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).  As long as the evidence falls “within the
zone of reasonable disagreement,” we will not substitute our judgment for that
of the fact-finder.  See City of Keller v. Wilson, 168 S.W.3d
802, 822 (Tex. 2005).

          The
jury first found that Cristobal did not loan money to Allen.  The material terms of a contract to loan
money are “the amount to be loaned, the maturity date of the loan, the interest
rate, and the repayment terms.”  Farah v. Mafrige & Kormanik, P.C.,
927 S.W.2d 663, 678 (Tex. App.—Houston [1st Dist.] 1996, no writ) (citing T.O. Stanley Boot Co. v. Bank of El Paso,
847 S.W.2d 218, 221 (Tex. 1992)).  The
trial court admitted four cancelled checks, totaling $52,000, written by
Cristobal to Allen.  Cristobal also
testified that she transferred about $33,000 worth of Allen’s credit card debt
to accounts opened in Cristobal’s name to take advantage of her lower interest
rate and to improve Allen’s credit score. 
According to Cristobal, she loaned Allen this money in reliance on his
promises that he would repay her and that he would continue making the credit
card payments.  The trial court also
admitted e-mails from Allen which included statements such as “If ‘things’ work
out, I will return ALL of the money immediately, if not it will just take me
longer.”

          In
contrast, Allen testified that he and Cristobal never discussed repayment of
the checks or funds transferred to Cristobal’s credit cards.  Allen and Cristobal planned on getting
married, both parties contributed money to their joint account, and they did
not condition any of those contributions on future repayment.  And, although Cristobal characterized her
financial arrangement with Allen as a loan, she did not testify about the
loan’s maturity date, interest rate, or any other repayment terms.

We defer to the jury’s interpretation
of evidence and weighing of this contradictory testimony.  See Jackson,
116 S.W.3d at 761;
Grider, 260 S.W.3d at 57.  A jury
reasonably could have determined based upon the evidence presented that
Cristobal gave the money to Allen as a gift or that they had pooled their money
for their mutual benefit and not as a loan with anticipated repayment.  We hold that the jury’s determination that
Cristobal did not loan money to Allen is not against the great weight and
preponderance of the evidence.

          The
jury also found that Allen did not agree to repay the charges he transferred to
Cristobal’s credit cards.  Cristobal
testified that Allen promised that, after transferring his debts to Cristobal’s
credit cards, he would continue making the payments and Cristobal would bear no
financial responsibility for the amounts transferred.  Cristobal relies on excerpts from Allen’s
e-mails which include the following statements:

·       
[You’re] right
about the Discover, I will keep that one too if you think I need to.  That one went to the Amex bill that we
ran up though—I will keep it if you want.

 

·       
The first thing
attempting to do is pay down/off the cards so you can get your credit scores
higher.  This should be happening this
week (some).

 

·       
[T]he bank is
STILL messing up things and I NOW hope to have more of your cards paid down
soon (should have been done 10–14 days ago). 
The USAir card should be almost paid off and you can use it if you want.

 

·       
I am probably
going to have to give back the Chase card payment to
you. . . . I’ll send all of the statements that I have and
it will show that I had paid off the original amount put on the card.

 

Allen testified that Cristobal
originally proposed opening new credit card accounts with low interest rates
and transferring his debt to those accounts.  They never discussed repayment of the amounts
transferred and Allen never agreed that he would be solely responsible for
paying off these debts.  Allen
acknowledged that he continued to make payments on the credit cards after their
relationship ended; he maintained, however, that he did this because he wanted
to help Cristobal improve her credit so she could buy a house in New Jersey,
and not because of a contractual obligation to repay.  We defer to the jury’s resolution of this conflicting
testimony and hold that the jury’s finding that Allen did not agree to repay
all of the transferred charges is not against the great weight and
preponderance of the evidence.

Denial of Requested Questions on Alternative Causes of
Action

          Finally,
Cristobal contends that the trial court erred by refusing to submit questions
in the written charge on Cristobal’s claims for quantum meruit and unjust
enrichment.  A trial court must submit
the questions, instructions, and definitions that are raised by the written
pleadings and the evidence presented at trial. 
Tex. R. Civ. P. 278.  But a trial court may refuse to submit a
properly requested question if no evidence exists to warrant its submission.  Elbaor
v. Smith, 845 S.W.2d 240, 243 (Tex. 1992); see also City of The Colony v. N. Tex. Mun. Water Dist., 272 S.W.3d
699, 746 (Tex. App.—Fort Worth 2008, pet. dism’d) (“[Rule 278] is a
substantive, nondiscretionary directive to trial courts, requiring them to
submit requested questions to the jury if the pleadings and any evidence
support them.”).  In determining whether
legally sufficient evidence of Cristobal’s alternative claims exists, we
examine the record for evidence supporting the questions and disregard all
contrary evidence.  See Elbaor, 845 S.W.2d at 243.  To be entitled to reversal due to the trial
court’s failure to submit a question, the complaining party must have requested
the question in writing and in the substantially correct wording.  Tex. R. Civ. P. 278; C.M. Asfahl Agency v. Tensor, Inc., 135
S.W.3d 768, 780 (Tex. App.—Houston [1st Dist.] 2004, no pet.)
(holding that trial court’s failure to submit valid
theory of recovery may constitute reversible error when question is “timely
raised by pleadings and evidence and properly requested to be included in the
charge”).

 

 

A.   
Quantum Meruit

Cristobal proposed the following
question regarding quantum meruit:

QUESTION NO. 9: 
Did Ms. Cristobal perform compensable work for Mr. Allen?

 

One party performs compensable work if valuable services
are rendered or materials furnished for another party who knowingly accepts and
uses them and if the party accepting them should know that the performing party
expects to be paid for the work.

 

Quantum meruit is an equitable remedy
that is independent of an express contract. 
See Vortt
Exploration Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990); Speck v. First Evangelical Lutheran Church of Houston, 235 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.]
2007, no pet.).  A
party may recover under this theory when no express contract governs the
services rendered or materials furnished. 
Vortt Exploration, 787 S.W.2d
at 944; Speck, 235 S.W.3d at 815
(“Quantum meruit ‘is based upon the promise implied by law to pay for
beneficial services rendered and knowingly accepted.’” (quoting Campbell v. Nw. Nat’l Life Ins. Co., 573
S.W.2d 496, 498 (Tex. 1978))).  A
plaintiff seeking to recover under quantum meruit must prove that:  (1) valuable services were rendered or
materials furnished; (2) for the person sought to be charged; (3) which
services and materials were accepted by the person sought to be charged, used
and enjoyed by him; and (4) under such circumstances as reasonably notified the
person sought to be charged that the plaintiff in performing such services was
expecting to be paid by the person sought to be charged.  Vortt
Exploration, 787 S.W.2d at 944; Speck, 235 S.W.3d at 815.

          Here,
Cristobal allegedly loaned money to Allen.  Cristobal cites to no authority that holds that
loaning money and transferring debt qualifies as the “valuable services
rendered or materials furnished” necessary to support recovery under quantum
meruit.  A loan of money is not the type
of benefit that allows a claim for equitable relief on a quantum meruit
theory.  See Vortt Exploration, 787 S.W.2d at 944–45;
cf. La Sara Grain Co. v. First Nat’l Bank,
673 S.W.2d 558, 567 (Tex. 1984) (holding that pure extension of credit does not
constitute “goods or services,” and therefore borrower in this transaction will
not qualify as consumer under Deceptive Trade Practices Act).  We therefore hold that the trial court
correctly refused her requested jury questions relating to quantum meruit.

B.   
Unjust Enrichment

Cristobal further contends that the
trial court erred in refusing to submit a jury question on unjust enrichment.  Although unjust enrichment is usually
characterized as a basis for quantum meruit recovery, we have held that it can
be an independent cause of action.[1]  Pepi
Corp. v. Galliford, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.]
2007, pet. denied) (“Unjust enrichment is an independent cause of action.  However, a claim that the opposing party is
unjustly enriched by retaining the benefit of services rendered by the
plaintiff can also be the basis for a quantum meruit cause of action, rather
than a separate claim in itself.”); see
also HECI Exploration Co. v. Neel, 982 S.W.2d 881, 885 (Tex. 1998) (noting
that statute of limitations for unjust enrichment claim is two years).  Unjust enrichment is an equitable principle
requiring one who receives benefits unjustly to make restitution for those
benefits.  Villarreal v. Grant Geophysical, Inc., 136 S.W.3d 265, 270 (Tex.
App.—San Antonio 2004, pet. denied).  A
plaintiff recovers under an unjust enrichment theory if a defendant obtains a
benefit from the plaintiff “by fraud, duress, or the taking of an undue
advantage.”  Heldenfels Bros., Inc. v. City of Corpus
Christi, 832 S.W.2d 39, 41 (Tex. 1992).  Unjust enrichment occurs when the defendant
wrongfully secures a benefit or passively receives a benefit which would be
unconscionable to retain.  Tex. Integrated Conveyor Sys. v. Innovative Conveyor Concepts, Inc., 300 S.W.3d 348,
367 (Tex. App.—Dallas 2009, pet. denied).

Although Cristobal contends that she
requested a question on unjust enrichment, she actually requested a question on
promissory estoppel.  Cristobal requested
the following question:

QUESTION NO. 7: 
Did Ms. Cristobal substantially rely to her detriment on Mr. Allen’s
promise to pay the debts and/or loan, and was this reliance foreseeable by Mr.
Allen?

 

This question does not inquire about
fraud or duress, but instead focuses on Cristobal’s reliance.  It exactly tracks the pattern jury charge’s
recommended question for promissory estoppel. 
See Comm. On Pattern Jury
Charges, State Bar of Tex., Texas Pattern
Jury Charges: Business, Consumer, Insurance, Employment PJC 101.41 (2008); see also Wheeler v. White, 398 S.W.2d
93, 96 (Tex. 1966) (stating that elements of claim for promissory estoppel are
(1) a promise, (2) that could be reasonably be expected to induce forbearance
of a definite and substantial character, (3) which does induce such forbearance
on the part of the promise, and (4) creates a circumstance where injustice may
only be avoided by the enforcement of the promise).  In contrast, jury questions on unjust
enrichment generally ask whether the defendant was unjustly enriched due to fraud,
duress, or the taking of undue advantage or if the defendant retained a benefit
to the loss of another or against the fundamental principles of justice,
equity, and good conscience.  Citizens Nat’l Bank v. Allen
Rae Invs., Inc., 142 S.W.3d 459, 490 (Tex. App.—Fort Worth 2004, no pet.)
(“Did [defendant] obtain 300 shares of stock [in Allen Rae] by fraud, duress,
or the taking of undue advantage?”); Conoco,
Inc. v. Fortune Prod. Co., 35 S.W.3d 23, 31 (Tex. App.—Houston [1st Dist.]
1998) (“Unjust enrichment is defined as the unjust retention of a benefit to
the loss of another, or the retention of money or property of another against
the fundamental principles of justice or equity and good conscience.”), rev’d on other grounds, 52 S.W.3d 671
(Tex. 2000).

Cristobal’s proposed jury instruction
at trial, based on promissory estoppel, thus differs from her argument on
appeal that the trial court should have asked the jury about unjust enrichment.
 Cristobal’s complaint on appeal does not
comport with her request made at trial; thus, we hold that she waived her
complaint because she did not present it to the trial court.  Wolfahrt
v. Holloway, 172 S.W. 3d 630, 639–40 (Tex. App.—Houston [14th Dist.] 2005,
pet. denied) (stating that an argument raised on appeal must comport with an
argument made at trial).

Conclusion

We hold that the jury’s findings are
not against the great weight and preponderance of the evidence.  We also hold that Cristobal failed to
preserve her complaint regarding the admission of Allen’s e-mails.  We further hold that Cristobal is not
entitled to a jury question on quantum meruit, and she never requested a question
on unjust enrichment in the trial court and thus cannot complain about the lack
of one on appeal.  We therefore affirm
the judgment of the trial court.

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Sharp.











[1] We
note that other courts of appeals have held that unjust enrichment is not an
independent cause of action.  See, e.g., Barnett v. Coppell N. Tex. Court Ltd., 123 S.W.3d 804, 816–17
(Tex. App.—Dallas 2003, pet denied) (holding that, because unjust enrichment is
not an independent cause of action, trial court erroneously instructed jury on
it).