Opinion issued May 8, 2008


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-07-00006-CV
  __________
 
REBECCA DUNN GRIDER, Appellant
 
V.
 
MIKE O’BRIEN, P.C., O’QUINN & LAMINACK,
AND ITS SUCCESSORS IN INTEREST,
THE O’QUINN FIRM, JOHN M. O’QUINN,
AND KAISER & MAY, L.L.P., Appellees
 

 
 
On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2005-57944
 

 
 
O P I N I O N
           Rebecca Dunn Grider sued Mike O’Brien, P.C., O’Quinn & Laminack, and its
successor in interest, the O’Quinn Firm, John M. O’Quinn and Kaiser & May, L.L.P.
(collectively “the law firms”) for legal malpractice. After all parties filed motions for
summary judgment, the trial court denied Grider’s motion and granted the motions
filed by the law firms. In one issue, Grider appeals the trial court’s granting of
summary judgment. 
          We affirm. 
Background
          Grider sued her physician, Adam Naaman, M.D., for medical malpractice, and
the jury rendered a unanimous verdict for the defendant doctor. The trial court signed
a final judgment on May 3, 2000,


 and Grider filed her notice of appeal on August 25. 
The case was transferred from Houston to Corpus Christi, and the Corpus Christi
Court of Appeals reversed and rendered for Grider on Naaman’s liability and
remanded for a “separate new trial solely on unliquidated damages as liability is not
contested.” Grider v. Naaman, 83 S.W.3d 241, 246 (Tex. App.—Corpus Christi
2002). Naaman filed a petition for review, and the Texas Supreme Court reversed the
court of appeals’ judgment and, because her notice of appeal was untimely filed,
dismissed Grider’s appeal for want of jurisdiction . Grider v. Naaman, 126 S.W.3d
73 (Tex. 2003). 
          Grider sued the law firms for negligence in connection with their appellate
representation in her medical malpractice suit. Specifically, Grider asserted that the
law firms negligently represented her
A.By advising Grider that her notice of appeal was due on August
29, 2000 instead of its actual due date in early August.
 
B.By advising Grider not to appeal the adverse verdict and
judgment.
 
C.By failing to properly calculate the due date for Grider’s notice of
appeal.
 
D.By delaying notification until July 18, 2000 it [sic] notification to
Grider that she had lost her motion for new trial and that they
would not represent her on appeal.
 
E.By delaying the filing of the notice of appeal or by conduct which
delayed the filing of Grider’s notice of appeal.
 
F.By failing to timely file Grider’s notice of appeal, resulting in the
dismissal of her appeal.
 
G.In general, by failing to promptly and competently prosecute
Grider’s claims and appeals. 

Grider moved for summary judgment or alternatively, partial summary judgment
because the law firms were negligent in their handling of the Naaman appeal by
failing to timely file the notice of appeal, and their negligence proximately caused $3
million in actual damages and entitled her to $6 million in punitive damages.
          In the O’Quinn defendants’ cross-motion for summary judgment, which was
joined by the remaining defendants, they argued that, because both legally and
factually sufficient evidence supported the jury’s unanimous verdict in favor of
Naaman, Grider, as a matter of law, could not prove that the law firms’ alleged failure
to timely perfect an appeal proximately caused her any damages. The trial court ruled
as follows:
Considering all the summary judgment evidence and the
authorities presented by counsel, the Court rules that there are no
contested issues of material fact and rules that, in an appeal to the
Supreme Court in the underlying case, the opinion of the Thirteenth
Court of Appeals should be reversed and the judgment of the 80th
District Court of Harris County in the underlying case should be
affirmed.

The trial court further ordered that Grider’s summary judgment “as to the outcome on
appeal of her adverse jury verdict is denied,” and the law firms’ summary judgment
is granted “that, on appeal, the trial court’s judgment should be affirmed.” Grider
appeals the granting of summary judgment in favor of the law firms. 
 Summary Judgment
           We review the trial court’s ruling on a motion for summary judgment de novo.
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). We
view the evidence in a light most favorable to the non-movant, making all reasonable
inferences and resolving all doubts in the non-movant’s favor. Rhone-Poulenc, Inc.
v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Hoover v. Larkin, 196 S.W.3d 227, 230
(Tex. App.—Houston [1st Dist.] 2006, no pet.). When, as here, both sides move for
summary judgment and the trial court grants one motion and denies the other, the
appellate court should review both parties’ summary judgment evidence and
determine all questions presented. FM Props. Operating Co. v. City of Austin, 22
S.W.3d 868, 872 (Tex. 2000). The appellate court should render the judgment that
the trial court should have rendered. Id. In order to prove appellate legal malpractice,
Grider was required to bring to the trial court the same evidence she would have
presented to the court of appeals, such as the clerk’s record, the reporter’s record,
proposed points of error, and the law in support thereof. See Maxey v. Morrison, 843
S.W.2d 768, 770–71 (Tex. App.—Corpus Christi 1992, writ denied). 
Legal Malpractice
          To prevail on a legal malpractice claim, a plaintiff must show that “(1) the
attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach
proximately caused the plaintiff’s injuries, and (4) damages occurred.” Alexander v.
Turtur & Assocs., Inc., 146 S.W.3d 113, 117 (Tex. 2004); Greathouse v. McConnell,
982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). If a legal
malpractice case arises from prior litigation, a plaintiff must prove that, but for the
attorney’s breach of his duty, the plaintiff would have prevailed in the underlying
case. Greathouse, 982 S.W.2d at 172. Cases often refer to this causation aspect of
the plaintiff’s burden as the “suit-within-a-suit” requirement. See id. at 173. In
general, one proves causation in a legal malpractice suit by expert testimony. See
Alexander, 146 S.W.3d at 119–20. 
          The determination of proximate cause is usually a question of fact. See El
Chico Corp. v. Poole, 732 S.W.2d 306, 313–14 (Tex. 1987). This is true in legal
malpractice actions as well. In cases of appellate legal malpractice, however, the
determination of causation requires determining whether the appeal in the underlying
action would have been successful. Id. The plaintiff must show that but for the
attorney’s negligence the client would have prevailed on appeal. See Jackson v.
Urban, Coolidge, Pennington & Scott, 516 S.W.2d 948, 949 (Tex. Civ.
App.—Houston [1st Dist.] 1974, writ ref’d n.r.e.). The rationale for requiring this
determination is that, if the appeal would not have succeeded and the trial court
judgment would have been affirmed, the attorney’s negligence could not have caused
the plaintiff any damage. Id. On the other hand, if the appeal would have succeeded
in reversing the trial court’s judgment and obtaining a more favorable result, then the
plaintiff sustained damage because of the attorney’s negligence. Millhouse v.
Wiesenthal, 775 S.W.2d 626, 627 (Tex. 1989). In cases involving appellate legal
malpractice, the question of whether an appeal would have been successful depends
on an analysis of the law and the procedural rules. As the Millhouse court noted,
because this requires a review of the trial record and the briefs in order to determine
whether the trial court committed reversible error, “a judge is clearly in a better
position” to do this than is a jury. Id. at 628. Therefore, where the issue of causation
hinges on the possible outcome of an appeal, the question of causation is to be
resolved by the court as a question of law. Id.; Klein v. Reynolds, Cunningham,
Peterson & Cordell, 923 S.W.2d 45, 47 (Tex. App.—Houston [1st Dist.] 1995, no
writ).
          Grider contends that the Corpus Christi Court of Appeals’ opinion shows what
the outcome of the appeal at the intermediate level would have been—reverse and
render in part and remand in part. The law firms argue, however, that, because the
Corpus Christi Court of Appeals lacked jurisdiction to hear the appeal, its opinion is
void and “should be regarded as if it never existed.” We agree with the law firms. 
See Cleveland v. Ward, 285 S.W. 1063, 1071 (Tex. 1926) (judgment that is later
reversed by higher court is null and void); Hudson v. Winn, 859 S.W.2d 504, 506
(Tex. App.—Houston [1st Dist.] 1993, writ denied) (when court lacks jurisdiction,
any action taken by court is void and should be regarded as if it never existed). The
law firms further contend that the trial court in the appellate legal malpractice case
was required to review the entire record in the underlying case “in order broadly to
determine whether the trial court [in the medical malpractice case] committed
reversible error.” They assert that the trial court in the appellate legal malpractice
case can, as the “sole and final arbiter of all appellate issues, decide the issue of
causation as a matter of law.” Again, we agree. 
Medical Malpractice
          Grider presented one issue to the Corpus Christi Court of Appeals claiming
that, in view of the admitted violations of the standard of care by Naaman and the
absence of probative evidence to support the sole defensive theory, there was no
legally and/or factually sufficient evidence to support the jury’s verdict.
Sufficiency Standard of Review
          We review legal conclusions de novo. See City of Pasadena v. Gennedy, 125
S.W.3d 687, 691 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). “When the
complaining party challenges the legal sufficiency of the evidence underlying an
adverse finding on which it had the burden of proof, the party must demonstrate on
appeal that the evidence conclusively established all vital facts in support of the
issue.” Id. at 692. “We employ a two-part test in reviewing such a challenge.” Id. 
“We first look for evidence supporting the finding, ignoring all evidence to the
contrary.” Id. “If there is no evidence supporting the finding, we then examine the
entire record to see if the contrary proposition is established as a matter of law.” Id. 
We apply this standard of review to Grider’s legal-sufficiency challenges to the
court’s fact findings on the elements of their claims.
          To determine whether there is some evidence to support a fact finding, we must
view the evidence in a light that tends to support the finding of disputed fact and
disregard all evidence and inferences to the contrary. Wal-Mart Stores, Inc. v. Miller,
102 S.W.3d 706, 709 (Tex. 2003). If more than a scintilla of evidence supports the
fact finding, we must uphold it. See id. More than a scintilla of evidence exists if the
evidence “rises to a level that would enable reasonable and fair-minded people to
differ in their conclusions.” Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex.
2004) (quoting Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997)). Conversely, evidence that is “so weak as to do no more than create a mere
surmise’’ is no more than a scintilla and, thus, no evidence. Id. (quoting Kindred v.
Con/Chem., Inc., 650 S.W.2d 61, 63 (Tex. 1983)). “The final test for legal
sufficiency must always be whether the evidence at trial would enable reasonable and
fair-minded people to reach the verdict under review . . . . [L]egal-sufficiency review
in the proper light must credit favorable evidence if reasonable [fact finders] could,
and disregard contrary evidence unless reasonable [fact finders] could not.” City of
Keller, 168 S.W.3d at 827; accord Chubb Lloyd’s Ins. Co. of Tex. v. H.C.B. Mech.,
Inc., 190 S.W.3d 89, 92 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The jury’s
failure to find a particular fact need not be supported by any evidence, because the
jury acts as the ultimate decision maker on the credibility of the proponent’s case and
is free to disbelieve the evidence presented by the party with the burden of proof. 
Yap v. ANR Freight Sys., 789 S.W.2d 424, 425 (Tex. App.—Houston [1st Dist.] 1990,
no writ). 
          When conducting a factual sufficiency review, we must consider all of the
evidence, including any evidence contrary to the verdict. Plas-Tex., Inc. v. U.S. Steel
Corp., 772 S.W.2d 442, 445 (Tex. 1989). Furthermore, we must reverse on the basis
of factual insufficiency if the court’s finding is so against the great weight and
preponderance of the evidence as to be manifestly unjust. Pool v. Ford Motor Co.,
715 S.W.2d 629, 635 (Tex. 1986). When a party challenges the factual sufficiency
of the evidence supporting an adverse finding on which it bore the burden of proof,
it must demonstrate the adverse finding is against the great weight and preponderance
of the evidence. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). Only
if we determine, after considering all the evidence, the finding is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust will we set
aside the verdict for factual insufficiency. Id.
          The jury is the sole judge of the witnesses’ credibility and the weight to be
given their testimony. Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761
(Tex. 2003). Moreover, the jury is to assess the weight and credibility of an expert’s
proffered testimony. E.I. du Pont de Nemours & Co., Inc. v. Robinson, 923 S.W.2d
549, 558 (Tex. 1995); Olympic Arms, Inc. v. Green, 176 S.W.3d 567, 585 (Tex.
App.—Houston [1st Dist.] 2004, no pet.). The jury may believe one witness and
disbelieve another and resolve inconsistencies in any testimony. We cannot substitute
our opinion for that of the jury or determine that we would have weighed the evidence
differently or reached a different conclusion. Hollander v. Capon, 853 S.W.2d 723,
726 (Tex. App.—Houston [1st Dist.] 1993, writ denied).
           The Law
          To prevail at trial on her claim of medical malpractice, Grider’s burden would
have been to establish a “reasonable medical probability” that Naaman’s acts or
omissions proximately caused her alleged injuries. See Park Place Hosp. v. Estate
of Milo, 909 S.W.2d 508, 511 (Tex. 1995); Duff v. Yelin, 751 S.W.2d 175, 176 (Tex.
1988). Meeting that burden requires proof of the following elements: (1) that
Naaman had a duty to comply with a specific standard of care; (2) that Naaman
breached that standard of care; (3) that Grider was injured; and (4) that there was a
causal connection between the breach of the standard of care and the injury. See
former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 1.03(a)(4) (current version at Tex. 
Civ. Prac. & Rem. Code Ann. § 74.001(13) (Vernon 2005)) (including a cause of
action against a physician within definition of “health care liability claim”); Price v.
Divita, 224 S.W.3d 331, 336 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); Day
v. Harkins & Munoz, 961 S.W.2d 278, 280 (Tex. App.—Houston [1st Dist.] 1997, no
writ); see also IHS Cedars Treatment Ctr. v. Mason, 143 S.W.3d 794, 798 (Tex.
2004) (generally stating elements of negligence claim). 
          The causation element of a negligence claim comprises the two following
components: the cause in fact, or “substantial factor,” component and the
foreseeability component. IHS Cedars Treatment Ctr., 143 S.W.3d at 798; Leitch
v. Hornsby, 935 S.W.2d 114, 118–19 (Tex. 1996); Travis v. City of Mesquite, 830
S.W.2d 94, 98 (Tex. 1992). Foreseeability requires that a person of ordinary
intelligence would have anticipated the danger caused by the negligent act or
omission. Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex.
1995). Because both elements are required, a party who establishes only that an
injury was foreseeable cannot prevail.
          Merely showing that Grider’s claimed injuries would not have occurred but for
Naaman’s alleged negligence is not sufficient. Naaman’s alleged negligence must
have been a substantial factor in bringing about Grider’s claimed harm. See IHS
Cedars Treatment Ctr., 143 S.W.3d at 799 (citing Lear Siegler, 819 S.W.2d at 472); 
see also Boys Clubs, 907 S.W.2d at 477 (explaining that defendant’s conduct may be
too attenuated to constitute legal cause of alleged injury “even if the injury would not
have happened but for the defendant’s conduct”) (citing Union Pump Co. v.
Allbritton, 898 S.W.2d 773, 776 (Tex. 1995); Lear Siegler, 819 S.W.2d at 472). 
Accordingly, evidence that shows only that the defendant’s alleged negligence did
no more than furnish a condition that made the alleged injuries possible will not
suffice to establish the substantial-factor, or cause-in-fact, component of proximate
cause. See IHS Cedars Treatment Ctr., 143 S.W.3d at 799 (citing Boys Clubs, 907
S.W.2d at 477; Union Pump, 898 S.W.2d at 776; Lear Siegler, 819 S.W.2d at 472).
Analysis
          The underlying medical malpractice suit arose from a biopsy procedure
performed to diagnose whether Grider had a recurrence of Hodgkin’s disease. Grider
alleged that Naaman negligently cut her brachial plexus nerve roots, which control
the ability to grip, hold, or move the hand, leaving her with a permanent claw left
hand. The jury was asked “Do you find from a preponderance of the evidence that
the negligence, if any, of Dr. Adam Naaman proximately caused the injury to
Plaintiff?” A unanimous jury answered “no,” and the remaining jury issues, which
were predicated on an affirmative answer, were not answered. Grider presented one
issue to the Corpus Christi Court of Appeals claiming that, in view of the admitted
violations of the standard of care by Naaman and the absence of probative evidence
to support the sole defensive theory, there was no legally and/or factually sufficient
evidence to support the jury’s verdict.
          This “suit within a suit” requires us to review the trial record and the briefs to
determine if Grider’s appeal, had the notice of appeal been timely filed, would have
succeeded in reversing the trial court’s judgment and obtaining a more favorable
result. See Millhouse, 775 S.W.2d at 627, 628. The summary judgment evidence
includes Naaman’s petition for review and Grider’s brief on the merits that were filed
in the Texas Supreme Court in the medical malpractice case after the Corpus Christi
Court of Appeals entered judgment in Grider’s favor reversing the trial court’s take-nothing judgment.


 Grider challenged the sufficiency of the evidence to support the
verdict, and states “the vital fact is whether Grider’s anatomy was normal, i.e.
whether her brachial plexus nerve roots were in the correct location.”
          The parties did not dispute that a doctor breaches the standard of care if he cuts
the brachial plexus nerve believing that he is in the stellate ganglion region of
someone with normal anatomy. They also did not dispute at trial that Naaman had
in fact cut Grider’s brachial plexus nerves. They did, however, dispute at trial
whether Grider’s brachial plexus nerves were in a normal location. Naaman
contended that Grider had an unusual anatomical variation in which these nerves were
not in their “normal” location, whereas Grider, in contrast, contended that Naaman
became “lost” during an operation and cut something in one part of Grider’s body
when he thought he was in another part. The evidence presented must establish (1)
the normal location of the brachial plexus nerves and (2) the location where Naaman
was operating at the time the injury occurred.
          It was undisputed at trial that the brachial plexus nerves are normally located
above the first rib. Naaman agreed with the statement that “Now under any normal
anatomy, I think your position is now clear that the brachial plexus nerves at C8 and
T1 would never go below the first rib.” Robert Feldtman, M.D., Naaman’s expert,
also agreed that, “ . . . in normal anatomical location that the brachial plexus nerves
that were cut in this case are above the first rib.” Thomas Winston, M.D., Grider’s
expert, also agreed. 
          Naaman testified that, during Grider’s operation, his instruments never went
above the first rib, and he could see the outline of the first rib against the pleura. He
further testified that he had no reason to think that cutting the pleura to sample the
enlarged tissue would have endangered the brachial plexus nerves because he was “on
the underneath side of the first rib.” When asked if he believed that the position that
he made the cut was not one that would normally endanger the brachial plexus,
Naaman summed up his actions as follows: 
I believe that where I made the cut was below the first rib, on the inside
of the chest. That’s where I was. That’s what I saw. That was an area
where the brachial plexus never courses. And I felt, since I’ve operated
on first ribs before and I knew that the first rib is between the brachial
plexus and the chest, I knew that as long as I have the first rib between
me and it, I’m in an area where the brachial plexus never is. 

We hold that this testimony constitutes legally sufficient evidence to support the
jury’s finding.
          Grider asserts that Naaman’s “anatomical abnormality” theory is flawed
because Naaman testified that he did not notice any abnormality during the surgery
and did not reference an abnormality in his post-operative report. She also contends
that David Kline, M.D., who attempted to repair Grider’s injury, testified that the
suspected lymph node was not pressing on Grider’s nerve, and Dr. Winston said the
enlarged lymph node would not have pushed the brachial plexus nerve down. 
Furthermore, Arthur Bell, M.D., who had more than 40 years of surgical expertise in
thoracic surgery, testified that he had never read, seen, or heard of a lymph node
moving the brachial plexus nerve into the stellate ganglion region. 
          The jury heard conflicting evidence as to Naaman’s alleged negligence. The
jury was free to believe one witness, disbelieve another, and resolve inconsistencies
in the testimony. See Dal-Chrome Co., 183 S.W.3d at 141. Considering all of the
evidence, we conclude the jury’s finding on negligence is not so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. 
            Having reviewed the “case-within-the-case” and concluded that the record
contains legally and factually sufficient evidence to support the jury’s verdict, we
hold that the trial court did not err in granting summary judgment in favor of the law
firms. Our review of the merits of Grider’s underlying medical malpractice case
reveals that she would not have prevailed at the appellate level. Grider thus cannot
prevail on her legal malpractice claim against the law firms because the law firms’
negligence did not proximately cause her damage. 
Conclusion
We affirm the trial court’s judgment.
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Taft, Nuchia, and Hanks.