Opinion issued July 14, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00940-CV

———————————

ATC Healthcare Services, Inc., Appellant

V.

New Century
Financial, Inc.,
Appellee



 



 

On Appeal from the 152nd District Court

Harris County, Texas



Trial Court Case No. 2007-38981

 



 

MEMORANDUM OPINION

This appeal
involves New Century Financial, Inc.’s enforcement of its security interest in certain
collateral of Chicago Nurses, Inc., a medical staffing agency that operated in
the state of Georgia that has since dissolved. 
Invoking its rights under a past franchise agreement with Chicago
Nurses, ATC Healthcare Services, Inc. (ATC) challenges the trial court’s
judgment enforcing New Century’s security interest in the collateral and dismissing
ATC’s counterclaims against New Century for tortious interference with
contract.  ATC further contends that the
trial court erred in adwarding attorney’s fees. 
We reverse the award of attorney’s fees and remand that portion of the
proceeding for a new hearing.  We affirm
the remainder of the judgment.

Background

New Century is a factoring company,
or factor, that purchases accounts receivable from businesses to secure
business operating loans.  Under a
factoring agreement, the factor purchases a client’s billing invoices at a
discount in exchange for a security interest in the receivables owed by third
parties in payment of these invoices. 
Through this transaction, the client gains short-term working capital funds.  The factor pays a discounted amount for the
invoices and manages the receivables and collections.  On payment, the factor remits a portion of
the payment to the factoring client, retaining the remainder for service fees.

New Century entered into a
factoring agreement with Chicago Nurses in September 2006.  At the time, Chicago Nurses already had a
factoring line with Advance Financial Corporation with a credit advance of
$200,000.  As part of the agreement, New Century
agreed to discharge the balance that Chicago Nurses owed to Advance.  In exchange, New Century acquired the right
to collect Chicago Nurse’s accounts with Chestatec Medical Center, Grady Health
System, Emory Health Care, and Northeast Georgia Health System (the account
debtors).  Pertinent to the parties’
dispute, the factoring agreement provides:

SECURITY INTEREST.  As a further inducement for [New Century] to
enter into this agreement, [Chicago Nurses] hereby grants to [New Century], as
collateral and security for the performance of any obligations hereunder, a
Security Interest, under the Illinois and Georgia Uniform Commercial Codes, in
all of [Chicago Nurse’s] presently owned or hereafter acquired accounts,
accounts receivable, contract rights, chattel paper, documents, instruments,
money deposit accounts (including the reserve account and any portion of the Maximum
Company Discount not rebated to [Chicago Nurses] hereunder), general intangibles,
insurance policies, all goods, equipment and inventory.  [Chicago Nurses] shall not sell, transfer, or
otherwise convey or dispose of any of said property except finished inventory
held for sale and sold in [Chicago Nurse’s] usual course of business.

Chicago Nurses and Advance informed
New Century that the balanced owed on the accounts receivables transferred from
Advance was due and outstanding.  New
Century relied on that representation and did not independently verify the
status of these accounts or whether the receivables were collectible.  New Century then perfected its interest in
Chicago Nurse’s collateral by filing UCC financing statements in Illinois and
Georgia.  The filing statements covered:

All presently existing or hereafter arising,
now owned or hereafter acquired, accounts, accounts receivable, contract
rights, chattel paper, documents, instruments, money deposit accounts, all
other rights to payment, general intangibles, goods, equipment, and inventory.  [Chicago Nurses] is not authorized to sell,
transfer, or otherwise convey or dispose of any said property except finished
inventory held for sale and sold in the normal course of business.

Also pursuant to the factoring agreement,
New Century informed the account debtors of New Century’s right to
payment.  The notice provided that “[t]his
notice and instruction remains in full force and effect until you are notified
by both the undersigned and New Century Financial, Inc. in writing to the
contrary.”  Within the next few weeks, the
account debtors signed and acknowledged receipt of New Century’s notice
directing that all payments of future amounts be made payable to Chicago Nurses
and New Century.  

In November 2006, New Century
stopped receiving payments on some of the invoices subject to the factoring
agreement.  New Century learned that approximately
$90,000 owed under the accounts was uncollectible, but determined that it could
remedy this shortfall by enforcing its interest in the account debtors’ future
accounts receivable.

A couple of weeks later, on
December 5, 2006, Chicago Nurses and ATC entered into a franchise agreement.  ATC did not search for account liens before
entering into the franchise agreement, and Chicago Nurses did not seek
authorization for the discharge of debt or transfer of collateral subject to
New Century’s security interest, as it had with Advance.  The franchise agreement included unusually
favorable terms for Chicago Nurses.  ATC waived
the franchise fee and instead paid Chicago Nurses $70,000 for the franchise,
and agreed to pay 70% of the gross margin as a royalty payment instead of the
55% Chicago Nurses had paid to each of its other franchisees.  The franchise agreement also required Chicago
Nurses to stop billing its clients in its own name and to direct its clients to
issue all payments in ATC’s name.  Except
for the name change, ATC’s business activities remained substantially the same
as Chicago Nurse’s had been, using the same location, equipment, nurses, and
hospitals.   

The account debtors’ payments to
New Century came to a halt as they received and paid the new invoices generated
under ATC’s name that directed payment to ATC. 
These included payments by Northeast Georgia and Emory Adventist
totaling $274,703.98 on accounts subject to New Century’s perfected security
interest.

New Century sent a letter to ATC
informing ATC of its rights to any amounts payable by ATC to Chicago Nurses and
demanding an accounting of all payments it had received that were subject to
New Century’s security interest in Chicago Nurse’s collateral.  ATC refused. 
It responded with its own demand letter contesting the validity of New
Century’s security interest in the accounts. 
In March 2007, New Century filed this suit, requesting declaratory
relief and claiming tortious interference with contract and conversion.  ATC counterclaimed for its own declaration,
breach of contract, tortious interference with contract, conversion, unjust
enrichment, and moneys had and received. 
The parties tried their claims to the bench, and the trial court entered
judgment in favor of New Century upholding its security interest in the
accounts.  This appeal followed.

Discussion

I.       Evidentiary
sufficiency

ATC first challenges the trial
court’s failure to find that ATC is the unimpaired owner of the account
collateral, and thus that New Century is not entitled to judgment on its
claims.  When, as here, a trial court
enters findings of fact and conclusions of law, we “indulge every reasonable
presumption in favor of the findings and judgment of the trial court, and no
presumption will be indulged against the validity of the judgment.”  Vickery
v. Comm’n for Lawyer Discipline, 5 S.W.3d 241, 252 (Tex. App.—Houston [14th
Dist.] 1999, pet. denied).  We review the
trial court’s conclusions of law de novo. 
Nguyen v. Yovan, 317 S.W.3d
261, 267 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing Smith v. Smith, 22 S.W.3d 140, 149 (Tex.
App.—Houston [14th Dist.] 2000, no pet.)). 
When performing a de novo review, we exercise our own judgment and
redetermine each legal issue.  Id. (citing Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex.1998)).  

We construe ATC’s challenge to the
ownership of the post-franchise accounts as a question of evidentiary
sufficiency.  When reviewing a trial
court’s factual determinations after a bench trial, we use the same factual
sufficiency standard that applies to jury verdicts.  Ortiz v.
Jones, 917 S.W.2d 770, 772 (Tex. 1996).  We consider all of the evidence in a neutral
light, and we set aside the verdict only if the evidence is so weak or if the
finding is so against the great weight and preponderance of the evidence such
that it is clearly wrong and unjust.  Grider v. Mike O’Brien, P.C., 260 S.W.3d
49, 57 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).  

In a bench trial, the trial court
judges the credibility of the witnesses, determines the weight of testimony,
and resolves conflicts and inconsistencies in the testimony.  See Sw.
Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.]
1992, writ denied).  As long as the
evidence falls “within [the] zone of reasonable disagreement,” we will not
substitute our judgment for that of the fact-finder.  See City
of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).

A.      Application of the UCC

ATC first contends that the trial
court committed legal error in granting the judgment in favor of New Century
because no evidence supported the trial court’s determination that ATC was
liable to New Century for the account payments. 
According to ATC, the trial court wrongly analyzed New Century’s claims
under the UCC when they should have been considered and rejected under a
vicarious liability theory because New Century lacked diligence in valuing
Chicago Nurse’s collateral at the time it assumed the accounts and discharged
Advance, the previous factor for Chicago Nurses.  

We disagree.  ATC’s vicarious liability theory ignores the
plain language of the factoring agreement and New Century’s UCC filings, both
admitted in evidence before the trial court.  In its findings of fact and conclusions of
law, the trial court found that New Century had perfected security interests in
Chicago Nurse’s “presently existing or hereafter arising, now owned or
hereafter acquired, accounts [and] accounts receivable . . . .”  This evidence, which ATC does not challenge,
supports the trial court’s conclusion that article 9 of the Uniform Commercial
Code applies to the parties’ dispute.  

A security interest is “an interest
in personal property . . . which secures payment or performance
of an obligation.”  Tex. Bus. & Com. Code Ann. § 1.201(35)
(West 2009).  If perfected, a security
interest is enforceable not only against the debtor, but also against purchasers
of the collateral, creditors, and other third parties.  Id.
§§ 9.201, 9.203(b)(1) (West 2011). 
As a result, New Century was not limited to its contractual rights
against Chicago Nurses or Advance in connection with the factoring
agreement.  On proper proof, the UCC gives
New Century the right to enforce its security interest directly against
ATC.  See
id. § 9.507(a) (West 2011) (“A filed financing statement remains
effective with respect to collateral that is sold, exchanged, leased, licensed, or otherwise disposed of and
in which a security interest . . . continues, even if the secured party knows
of or consents to the disposition.”) (emphasis added).  

The franchise agreement did not
confer to ATC rights in the collateral beyond those Chicago Nurses retained
under its factoring agreement with New Century. 
Chicago Nurses could not transfer rights that it did not possess.  See id.
§ 3.203(b) (West Supp. 2010) (transfer of instrument vests in transferee
any right of transferor to enforce instrument); id. § 9.203(b) (West 2011) (security interest attaches when
(1) debtor signs security agreement containing description of collateral; (2)
secured party gives value for security interest; and (3) debtor obtains rights
in collateral).  The trial court
correctly held that ATC’s rights under the franchise agreement were subject to
New Century’s rights to the collateral.

B.      Scope of New Century’s security interest

ATC also disputes the trial court’s
findings that continuing payments directed to ATC from the account debtors on
existing accounts as well as new accounts generated under ATC’s name after
Chicago Nurses and ATC entered into the franchising agreement, could be subject
to New Century’s perfected security interest. 
ATC maintains that the latter accounts were not Chicago Nurse’s
“hereafter acquired accounts,” but instead were ATC’s own, separate accounts. 

The placement of accounts under
ATC’s name or payment to ATC as directed in the franchising agreement, however,
does not affect New Century’s pre-existing rights in them as collateral for
outstanding loans New Century made to Chicago Nurses.  See id.
§ 9.507(a).  ATC relies on a
disclaimer in the franchising agreement in which Chicago Nurses disclaims any
authority to obligate ATC for its obligations to contend that ATC is insulated
from assuming any of Chicago Nurses’s obligations under the factoring
agreement.  This contention ignores New
Century’s perfected security interest in the accounts, which enforce directly
against ATC.  The trial court found that
ATC was not a buyer in the ordinary course of business; ATC does not challenge
this finding.  Based on that finding, which
the record supports, ATC’s rights to Chicago Nurses’ receivables under the
franchising agreement are subject to “all defenses of any party which would be
available in an action on a simple contract.” 
See id. § 3.306(b) (West
2002).  Legally sufficient evidence also
supports the trial court’s implied conclusion that new accounts landed after
the ATC franchise, despite bearing ATC’s name, were subject to New Century’s
security interest as account “hereafter arising, . . . or
hereafter acquired” because ATC was a continuation of Chicago Nurses’
business.  We hold that the judgment
properly requires ATC to pay damages representing the proceeds of the
collateral plus reasonable expenses of collection and enforcement, offset by
credit for collateral received by New Century. 

II.      Attorney’s
fees

ATC also challenges the propriety
and evidence supporting the reasonableness of the attorney’s fee award in favor
of New Century.  ATC first asserts that the
Declaratory Judgment Act cannot support the award because New Century abandoned
its request for declaratory relief at trial. 
See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008).  ATC does not identify the portion of the
record that supports this assertion, and our review of the record does not
support it either; on the contrary, the judgment recites that New Century
“requested attorney’s fees pursuant to the Texas Civil Practice & Remedies
Code § 37.009.”  ATC also contends that
attorney’s fees under the Declaratory Judgment Act are improper because the
judgment awards damages, not declaratory relief.  We disagree. 
Although the judgment uses the term “damages,” when read together with
the trial court’s findings of fact and conclusions of law—which are expressly incorporated by
reference—it essentially enforces New Century’s security interest, that is, the
“right to payment of a monetary obligation.” 
Tex. Bus. & Com. Code Ann.
§ 9.102(a)(2) (West 2011).  The judgment
therefore supports an award of attorney’s fees under section 37.009.

New Century also requested
attorney’s fees based on sections 9.607(d) and 9.608(a)(1)(A) of the Texas
Business and Commerce Code.  See id. §§ 9.607(d), 9.608(a)(1)(A)
(West 2011)  ATC contends that the UCC
does not provide any basis for the fee award. 
On the contrary, the trial court made express findings relating to the
validity of and New Century’s right to enforce its security interests as
against ATC.  In express support of the
attorney’s fee award, the trial court entered the following findings of fact
and conclusions of law:

13.     In event of default, a secured party may deduct from the
collections reasonable expenses of collection and enforcement, including reasonable
attorney fees and legal expenses incurred by the secured party.  The additional expense to recover a party’s
collateral is recoverable by the secured party. 
A security interest that secures payment or performance of an
obligation, may recover the reasonable expenses of collection and enforcement
and to the extent provided by agreement and not prohibited by law, reasonable
attorney’s fees and legal expenses incurred by the secured party.

. . . .

14.     [Chicago Nurses] defaulted under the terms and conditions of the
Purchase Agreement.

. . . . 

19.     [New Century] placed ATC on notice of its rights as purchaser of
the accounts and as the holder of a security interest in the accounts and
general intangibles of [Chicago Nurses], and ATC had a duty to remit all
payments otherwise payable to [Chicago Nurses] under the Franchise Agreement to
[New Century] . . . .  ATC knew of [New
Century’s] perfected security interest in the collateral, and ATC’s actions
caused [New Century] to incur the additional expense of attorney’s fees to
recover its collateral.   

(Citations omitted). 
These findings, which are unchallenged, support the trial court’s
decision to award attorney’s fees to New Century.

ATC also claims that the fee award
should be reversed because New Century failed to segregate the fees incurred in
trying its statutory claims from those it incurred in connection with its
conversion and unjust enrichment claims, and in defending the claims against
it, for which attorney’s fees were unrecoverable.  We agree. 
“[I]f any attorney’s fees relate solely to a claim for which such fees
are unrecoverable, a claimant must segregate recoverable from unrecoverable
fees.”  Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 313 (Tex.
2006).  The proof that New Century
provided to the trial court shows that New Century did not segregate its fees
or satisfy its burden to show that the fees fall within the narrow exception to
the duty to segregate—that
“discrete legal services advance both a recoverable and unrecoverable claim
that they are so intertwined that they need not be segregated.”  Id.
at 313–14.  ATC timely objected to New
Century’s failure to segregate.  In the
absence of any evidence segregating the fees, the trial court’s attorney’s fee
award, albeit less than the amount that New Century requested, must be reversed.

New Century’s unsegregated evidence
of attorney’s fees constitutes some evidence of what the segregated amount
should be.  Accordingly, we remand the
issue of New Century’s claim for attorney’s fees for further proceedings.  See
Hong Kong Dev., Inc. v. Nguyen, 229 S.W.3d 415, 455–56 (Tex. App.—Houston
[1st Dist.] 2007, no pet.) (“When an appellate court sustains a challenge that
attorney’s fees were not properly segregated, the remedy is to sever that
portion of the judgment awarding attorney's fees and to remand the cause for
the issue to be relitigated.”).

Conclusion

We hold that the trial court
properly applied the Uniform Commercial Code to the dispute between ATC and New
Century, and the evidence supports the finding that New Century has a valid, enforceable
security interest against ATC.  We
further hold that factually sufficient evidence does not support the trial
court’s attorney’s fee award.  We
therefore reverse the portion of the trial court’s judgment awarding New
Century its attorney’s fees and remand that issue to the trial court for
further proceedings.  We affirm the
remainder of the judgment.

 

 

                                                                   Jane
Bland

                                                                   Justice
 

 

Panel consists of Chief Justice Radack and Justices Bland and Wilson.[*]

 











[*]           The
Honorable Randy Wilson, Judge of the 157th District Court of Harris County,
participating by assignment.