**AFFIRMED and Opinion Filed May 11, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-01426-CV

**JMT PIONEER LLC, Appellant**
**V.**
**JONATHAN EARNHART DBA EARNHARTBUILT, Appellee**

**On Appeal from the 15th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. CV-18-0639**

## MEMORANDUM OPINION

Before Chief Justice Burns, and Justices Myers and Carlyle
Opinion by Chief Justice Burns

JMT Pioneer LLC appeals rejection of its requested declaratory judgment and specific performance, arising out of an assignment of a real estate purchase contract. We affirm.

On February 20, 2018, Jonathan Earnhart contracted to purchase an unimproved parcel of real estate. The Unimproved Property Contract (UPC) identified Earnhart and/or assigns as Buyer, the Amalraj Lila Grace Family Trust as Seller, and a purchase price of $200,000. It also provided that if the Seller failed to furnish an existing survey and Real Property Affidavit within ten days after the effective date of the UPC (March 2, 2018), Buyer was required to obtain a new

survey, at Seller's expense, no later than three days before the closing date. Closing was specified to occur on or before April 30, 2018 or within seven days following cure or waiver of objections to the title commitment, whichever was later. Additionally, if Earnhart discovered no access easement, he could terminate the contract and obtain a refund of his earnest money.

On February 23, 2018, in exchange for $300,000,[1] Earnhart assigned "all rights" to the UPC to JMT. The Assignment identified Earnhart as the Seller/Assignor and JMT as Buyer/Assignee, further identified Earnhart as the buyer in the UPC and the Trust as the seller, and attached the UPC. Pursuant to the Assignment, JMT agreed to purchase and close on the Property on or before March 10, 2018 and "to fulfill all conditions and terms of said purchase contract and of this Assignment of Contract."

JMT paid the earnest money to the title company. On February 28, 2018, the title company emailed the title commitment to JMT and included notice that a new survey was required and should be delivered to the title company prior to closing for review of any unrecorded easements. JMT exchanged emails with the title company about terms and the title company reiterated it needed the survey. The title company also disclosed to JMT that no recorded access easement existed. Upon learning no

---

[1] JMT was required to pay $200,000 to the Trust (also designated in the Assignment as "Seller") to perform the UPC, and pay to Earnhart at closing an additional $100,000 plus the $2,100 earnest money credit JMT would receive from the Trust.

easement existed, on March 7, 2018, Earnhart informed JMT he was attempting to secure an easement. JMT did not provide a survey. On March 10, JMT requested an extension of the assignment, but Earnhart did not respond to that request. JMT, however, did not provide a survey, waive the exception to title, or pay the full assignment fee.

On March 14, Earnhart informed JMT he had been unable to obtain an easement and asked if JMT still intended to close. In response, JMT asked for a concession on the price, and Earnhart informed JMT he could not change the price but "would fix this" and work to get the sale closed. The next day, Earnhart texted to ask if JMT was available to close "on Friday,"[2] and JMT responded it was ready when the title company was ready. On Friday March 16, Earnhart emailed that the assignment had ended on the 10th and said he would close on the Property. In a later email the same day, he informed JMT he was cancelling the Assignment due to its failure to timely close and emailed a "Termination of Assignment and Release of Earnest Money" by which he purported to unilaterally cancel the Assignment and agreed to return JMT's earnest money. Earnhart also notified the title company that the Assignment had lapsed. Nonetheless, JMT emailed later in the day that although it had appeared at the title company at 2:00 for closing, Earnhart had not appeared. Later the same afternoon, JMT emailed Earnhart and requested withdrawal of the

---

[2] The next Friday was March 16, 2018.

3

Termination and Earnhart offered to sign an extension if JMT came to his nearby office. Instead, the next day, on March 17, JMT threatened a lawsuit based on Earnhart "obstructing the sale." After Earnhart terminated the Assignment, Earnhart and the Trust terminated the UPC and a different entity owned by Earnhart entered into a new contract with the Trust on the same terms as the UPC.

JMT sued Earnhart and the Trust for breach of contract, and in addition to damages, sought specific performance. It also requested several declarations, including: a) pursuant to the Assignment JMT held the right to purchase the Property; b) JMT never reassigned that right to Earnhart; and, c) JMT's obligation to pay the Assignment fee was excused by Earnhart's prior material breach or repudiation in failing to provide a survey. JMT also sought a declaration that Earnhart had materially breached the Assignment in numerous ways prior to any breach by JMT. Earnhart asserted breach by JMT as a counterclaim and an affirmative defense. The trial court entered a Temporary Restraining Order enjoining sale of the property as provided in the new contract. JMT, Earnhart, and the Trust then entered into a Rule 11 agreement by which the Trust agreed to sell the Property to either JMT or Earnhart, whichever "was awarded the right to purchase the Property."

The suit proceeded to trial and a few days after the bench trial the judge wrote to the parties and provided his finding that "the right to purchase the property under

4

the assignment lapsed when it did not close on March 10, 2018." On August 22, 2018 the trial judge entered a final judgment denying JMT's request for declaratory relief and attorney's fees, Earnhart's request for attorney's fees, and all relief not expressly granted. Twenty-nine days after the judgment was entered, JMT filed a motion for new trial, motion for modification or reformation of the judgment, and a request for findings of fact and conclusions of law. Following Earnhart's response and a hearing, the motions and request were denied and this appeal followed.

In five issues, JMT contends 1) the trial court incorrectly interpreted the Assignment; 2) abused its discretion by awarding an equitable remedy "without reference to guiding principles and law"; 3) factually and legally insufficient evidence supports the verdict; 4) either no evidence or factually insufficient evidence existed to conclude JMT breached the contract; and 5) the judgment failed to dispose of the controversy.

## A.    Construction of the Assignment

In our de novo review of the Assignment and the UPC, *see URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018), we employ familiar rules of construction. Contracts to which we can give definite or certain legal meanings are unambiguous and we construe them as a matter of law. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996) ("The

failure to include more express language of the parties [sic] intent does not create an ambiguity when only one reasonable interpretation exists."). Mere disagreement regarding contractual interpretation does not create ambiguity.[3] *URI, Inc.*, 543 S.W.3d at 763.

We "presume parties intend what the words of their contract say" and interpret contract language according to its "plain, ordinary, and generally accepted meaning" unless the instrument directs otherwise. *URI, Inc.*, 543 S.W.3d at 764. We ascertain the parties' intentions by examining the entire writing and give effect to all provisions so none are rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Green Meadow Oil & Gas Corp. v. EOG Res., Inc.*, 390 S.W.3d 625, 627 (Tex. App.—Dallas 2012, no pet.). Documents referenced in or attached to a contract become part of the contract so long as the signed document clearly reflects that intent. *Bob Montgomery Chevrolet, Inc. v. Dent Zone Co.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.). Incorporated documents are read and interpreted as part of the contract into which they are incorporated. *Id.* We ignore parol evidence that varies or contradicts the contract. *Id.* at 757 ("[E]xtrinsic evidence may only be used to aid the understanding of an unambiguous contract's language, not change it or "create ambiguity.").

---

[3] Neither party pleaded nor argues ambiguity.

JMT contends the Assignment was irrevocable and unconditional, removed Earnhart from the transaction, and conveyed the UPC regardless of whether JMT timely performed as required by the Assignment. It contends Earnhart had no right to unilaterally terminate the Assignment despite its failure to pay the assignment fee, waive the objection to the title, obtain the survey, or close on the sale of the Property (all of which it contends was excused by Earnhart's prior material breach). JMT argues the plain meaning of the contracts entitled it to close the UPC and purchase the Property, so long as it performed by April 30, 2018.

Earnhart asserts we must read the Assignment and the UPC together, and the March 10 deadline in the Assignment is meaningless if the Assignment was not conditioned upon JMT closing the sale by that date. He contends he was entitled to terminate the Assignment because JMT failed to 1) provided the survey three days before closing as specified in the UPC; 2) waive the exception to title; 3) pay the assignment fee of $100,000; and, 4) close the UPC by March 10, 2018. He also argues JMT's assertion that the Assignment was absolute so as to wholly remove Earnhart from the UPC ignores the terms of both contracts and conflicts with JMT's contention that Earnhart materially breached the UPC by failing to provide a survey.

The time for performance is generally not material. *Argos Res., Inc. v. May Petroleum Inc.*, 693 S.W.2d 663, 665 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). Merely stating a date for performance does not make time of the essence. *Capcor*

7

*at KirbyMain, L.L.C. v. Moody Nat. Kirby Houston S, L.L.C.*, 509 S.W.3d 379, 390 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Nonetheless, if something in the nature or purpose of the contract makes clear that the parties intended time to be of the essence, "timely performance is essential to a party's right to require performance by the other party." *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004); *see also Capcor at KirbyMain*, *L.L.C.*, 509 S.W.3d at 390.

Although the Assignment did not include any express provision that time was of the essence, it specified a closing date—well in advance of the deadline in the UPC—and also incorporated the UPC. In turn, by expressly providing for termination or specific performance absent a timely closing, the UPC rendered time of the essence. Further, the March 10 Assignment closing date would have no meaning if wholly superseded by the later dates in the UPC. Reading both contracts together and giving meaning to all terms, we conclude as a matter of law that time was of the essence with respect to the deadlines in the Assignment and required JMT to perform no later than March 10th. *See Manor v. Manor*, No. 02-18-00056-CV, 2019 WL 7407740, at *7 (Tex. App.—Fort Worth Dec. 31, 2019, pet. denied) (plain meaning of terms permitting termination of contract if sale did not close by specified date rendered time of the essence and allowed non–defaulting party to terminate). We overrule JMT's first issue.

8

## B.    Sufficiency of the Evidence

Even if we were unable to conclude, as a matter of law, that a plain reading of the contracts rendered time of the essence, observing our obligation to indulge every presumption in favor of the judgment, we would reach the same conclusion based on the evidence. *See Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("In a case tried before the court without a jury, in which there are findings of fact and conclusions of law, the reviewing court will indulge every reasonable presumption in favor of the findings and judgment of the trial court"). In his finding, the trial judge did not specify why he deemed the Assignment to have lapsed, but could have determined that as a question of fact, time was of the essence and JMT failed to timely perform. *See Horton v. Stovall*, No. 05-16-00744-CV, 2020 WL 7640042, at *10 (Tex. App.— Dallas Dec. 23, 2020, no pet.) (absent express intent, whether time is of the essence and untimely performance is a material fact are questions of fact). As we explain below, we likewise conclude that legally and factually sufficient evidence supports the finding.

JMT bore the burden of proof regarding entitlement to the declarations it requested. Thus, with respect to the legal sufficiency challenge in its third issue,[4]

---

[4] JMT's third issue challenged the legal and factual sufficiency of the evidence supporting the "verdict." We do not evaluate whether sufficient evidence supports the "verdict," however, since the trial court issued factual findings rather than a verdict. Instead, an appeal from a nonjury trial in which findings of fact and

9

JMT must demonstrate that the evidence established the facts supporting its claim as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In conducting this review, we examine evidence supporting the finding and ignore all evidence to the contrary. *Grider v. Mike O'Brien, P.C.*, 260 S.W.3d 49, 56 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). If no evidence supports the finding, we then examine the entire record to determine whether the contrary proposition is established as a matter of law. *Id.* If more than a scintilla of evidence supports the finding, the no evidence challenge fails. *United Services Auto. Ass'n v. Croft*, 175 S.W.3d 457, 463 (Tex. App.—Dallas 2005, no pet.).

With respect to the factual sufficiency challenge in the same issue,[5] we consider all the evidence in a neutral light and set aside the court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Puig v. High Standards Networking & Computer Serv., Inc.*, No. 01-16-00921-CV, 2017 WL 4820171, at *2 (Tex. App.—Houston [1st Dist.] Oct. 26, 2017, no pet.) (mem. op.). For any sufficiency challenge, we defer to the fact-finder's determination regarding the

conclusions of law were issued should attack the sufficiency of the evidence supporting the finding rather than the judgment as a whole, and we accordingly evaluate the sufficiency of the evidence supporting the trial court's finding. *Thompson & Knight LLP v. Patriot Exploration, LLC*, 444 S.W.3d 157, 162 (Tex. App.–Dallas 2014, no pet.).

[5] JMT's fourth issue challenges the sufficiency of the evidence that JMT breached the contract, an issue subsumed by the trial court's finding that the Assignment lapsed. We accordingly address the fourth issue concurrently with the third.

witnesses' credibility, the weight accorded their testimony, and the jury's resolution of conflicting evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

JMT was informed by the title company on February 28 that a survey was needed. No dispute exists that JMT failed to provide a survey by March 7 (three days before the closing date), failed to waive the exception to the title commitment, failed pay the Assignment fee, and failed to close the sale by the 10th. In contrast, while some evidence suggests Earnhart's willingness to extend the deadline for JMT's performance, his conduct does not negate the contract terms. For instance, he refused the written extension requested by JMT. Further, although we find Earnhart's conduct troubling and potentially sufficient to have estopped him from insisting on JMT's timely performance with respect to the survey, JMT did not plead estoppel and we find no evidence of any prior breach by Earnhart.[6] Moreover, JMT provided no evidence to refute its failure to timely waive the exceptions to title or pay the assignment fee. Accordingly, JMT's failure to timely perform allowed Earnhart to terminate the Assignment. *See Capcor at KirbyMain, L.L.C.*, 509

---

[6] In support of its arguments that Earnhart materially breached prior to any breach by JMT, JMT argues Earnhart was the "Seller" and thus required to obtain the survey. In support of its argument, JMT relies on an email from the title company stating the "survey issue was always understood with the current owner and Mr. Earnhart." Such parol evidence cannot vary the plain meaning of the contracts' defined terms, and we reject this argument. *FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 64 (Tex. 2014) ("We cannot interpret a contract to ignore clearly defined terms"); *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011) (parties may not rely on extrinsic evidence to give contract "a meaning different from that which its language imports.").

S.W.3d at 391 (default in providing timely performance allowed non-defaulting party to terminate contract); *Man Indus. (India), Ltd. v. Midcontinent Exp. Pipeline, LLC*, 407 S.W.3d 342, 368 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (fundamental principle of contract law that when one party to a contract commits a material breach of that contract, non-breaching party is discharged or excused from further performance). Considering the evidence neutrally and alternatively disregarding all evidence not supporting the trial court's finding, we thus conclude the evidence is legally and factually sufficient to support the trial court's only factual finding. We overrule JMT's third and fourth issues.

## C. The Trial Court Awarded No Remedies

In its second point, JMT contends the trial court abused its discretion by *de facto* awarding rescission. "Rescission is an equitable remedy that operates to extinguish a contract that is legally valid but must be set aside due to fraud, mistake, or for some other reason to avoid unjust enrichment." *Gentry v. Squires Const., Inc.*, 188 S.W.3d 396, 410 (Tex. App.—Dallas 2006, no pet.). Although the effect of the trial court's denial of JMT's request for declaratory judgment is to allow Earnhart to close on the Property, JMT provides no authority for its argument that a judgment determining a contract has lapsed awards, de facto, rescission. We find no such authority. Giving meaning to all terms of the UPC and the Assignment, as the trial court did, we conclude JMT's failure to perform permitted Earnhart to terminate the

12

Assignment, which the trial court's finding recognized as having occurred prior to trial. We overrule JMT's second issue.

## C. Clarity of Judgment and Disposition of Entire Controversy

In its fifth and final issue, JMT complains that by deleting a finding from the judgment, that "Plaintiff's Assignment agreement from Defendant lapsed due to Plaintiff's failure to perform as contracted," the trial court rendered an ambiguous judgment that fails to specify whether the right to purchase the Property remained with JMT or "transferred" the rights back to Earnhart.[7] We disagree.

By omitting factual findings from the judgment, the trial court followed rule 299a, which dictates that "[f]indings of fact shall not be recited in a judgment." TEX. R. CIV. P. 299a. Instead, in a letter sent to the parties and filed in the record, the trial court issued findings shortly after the trial by which it informed the parties it had determined the Assignment lapsed. Similarly, the judgment denied all relief requested by both parties, as well as all relief not expressly granted. Because Earnhart had terminated the Assignment prior to JMT seeking declaratory relief, JMT had no rights in the Property at the time of trial and was denied any such rights when the trial court denied its requested declaratory relief.

---

[7] We observe that this argument contradicts JMT's contention that the trial court ordered rescission and note that the issues are not raised in the alternative.

We find no ambiguity in the judgment and we overrule JMT's fifth issue.

/Robert D. Burns, III/

ROBERT D. BURNS, III
CHIEF JUSTICE

181426F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

JMT PIONEER LLC, Appellant

No. 05-19-01426-CV        V.

JONATHAN EARNHART DBA
EARNHARTBUILT, Appellee

On Appeal from the 15th Judicial
District Court, Grayson County,
Texas
Trial Court Cause No. CV-18-0639.
Opinion delivered by Chief Justice
Burns. Justices Myers and Carlyle
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JONATHAN EARNHART DBA EARNHARTBUILT recover his costs of this appeal from appellant JMT PIONEER LLC.

Judgment entered May 11, 2021.

15