ACCEPTED
03-15-00378-CV
7516414
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/23/2015 1:16:31 PM
JEFFREY D. KYLE
CLERK

# No. 03-15-00378-CV

## JAMES HANSEN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/23/2015 1:16:31 PM
JEFFREY D. KYLE
Clerk

### v.

## LONNIE ROACH and
## BEMIS, ROACH & REED

---

## APPELLANT'S BRIEF

---

Scott R. Kidd
State Bar No. 11385500
512-330-1713
scott@kiddlawaustin.com
Scott V. Kidd
State Bar No. 24065556
512-542-9895
svk@kiddlawaustin.com
KIDD LAW FIRM
819 West 11th Street
Austin, TX  78701
512-330-1709 (fax)

Oral Argument Requested

# IDENTITY OF PARTIES AND COUNSEL

## APPELLANT

James Hansen

## APPELLANT'S COUNSEL

Scott R. Kidd
State Bar No. 11385500
512-330-1713
scott@kiddlawaustin.com
Scott V. Kidd
State Bar No 24065556
512-542-9895
svk@kiddlawaustin.com
KIDD LAW FIRM
819 West 11th Street
Austin, TX  78701
512-330-1709 (fax)

## APPELLEES

Lonnie Roach
Bemis, Roach & Reed

## APPELLEES' COUNSEL

John Shepperd
State Bar No. 18236050
john.shepperd@wilsonelser.com
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
909 Fannin Street, Suite 3300
Houston, TX  77010
713-353-2000
713-785-7780 (fax)

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL     i

TABLE OF CONTENTS     ii

INDEX OF AUTHORITIES     iv

CAPTION     1

STATEMENT OF THE CASE     1

STATEMENT REGARDING ORAL ARGUMENT     2

ISSUES PRESENTED     3

THE RECORD     4

STATEMENT OF FACTS     5

SUMMARY OF ARGUMENT     13

ARGUMENT & AUTHORITIES     17

     *Standard of Review*     17

     *The Policy Language*     21

     *Rules of Construction*     22

     *Interpretation of the Policy Language*     24

     *Continuation of the Business In Fact*     28

     *Continuation of Business Under Texas*
         *Business Organizations Code*     30

*The "Findings of Fact"*      35

*The Defense's Cases*      37

*No Subsequent-Act Defense After Breach of Contract*      38

CONCLUSION      40

PRAYER      41

CERTIFICATE OF COMPLIANCE WITH TRAP RULE 9.4(i)(3)      42

CERTIFICATE OF SERVICE      42

# INDEX OF AUTHORITIES

## CASES

*Alexander v. Turtur & Associates, Inc.,*
    146 S.W.3d 113 (Tex. 2004)     17

*Andrews v. Key,* 77 Tex. 35, 13 S.W. 640, 641 (1890)     36

*Barnett v. Aetna Life Insurance Co.,*
    723 S.W.2d 663, 666 (Tex. 1987)     23

*Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983)     20

*Continental Casualty Co. v. Warren,*
    254 S.W.2d 762, 763 (Tex. 1953)     23, 28

*Cooke County Appraisal District v. Teel,*
    129 S.W.3d 724 (Tex. App.—Ft. Worth 2004, no pet.)     36

*El Chico Corp. v. Poole,* 732 S.W.2d 306,
    313-314(Tex. 1987)     18

*FFE Transportation Services, Inc. v. Flugham,*
    154 S.W.3d 84 (Tex. 2004)     19

*Grider v. Mike O'Brien, P.C.,* 260 S.W.3d 49
    (Tex. App.—Houston [1st Dist.] 2008, pet. den.)     17, 19

*Gulf Insurance Company v. Parker Products,*
    498 S.W.2d 676, 679 (Tex. 1973)     23, 28

*Heritage Resources v. Hill,* 104 S.W.3d 612
    (Tex. App.—Austin 1998, no pet.)     20

*Insurance Company of North America v. Cash,*
    475 S.W.2d 912 (Tex. 1972)     23, 28

*Jackson v. Urban, Coolidge, Pennington & Scott,*
    516 S.W.2d 948, 949 (Tex. Civ. App—
    Houston [1st Dist.]1974, writ ref'd n.r.e.)         19

*Jackson v. Van Winkle,* 660 S.W.2d 807, 810 (Tex. 1983)    35

*Kelly-Coppedge, Inc. v. Highlands Ins. Co.,*
    980 S.W.2d 462, 464 (Tex. 1998)         22

*Mead v. Johnson Group, Inc.,* 615 S.W.2d 685,
    689 (Tex. 1981)         39

*Milhouse v. Weisenthal,* 775 S.W.2d 626 (Tex. 1989)    19

*Nicol v. Gonzales,* 127 S.W.3d 390, 394
    (Tex. App.—Dallas 2004, no pet.)         20

*Paul Revere Life Insurance Company v. Klock,*
    169 So.2d 493 (Fla. Ct. App. 1964)         37

*Principal Mutual Life Insurance Company v. Toranto,*
    1997 WL 279751 (N.D. Tex. 1997)         37

*State v. The Evangelical Lutheran Good Samaritan*
    *Society,* 981 S.W.2d 509, 511 (Tex. App.—
    Austin 1998, no pet.)         20

*Texas Farmers Insurance Company v. Murphy,*
    996 S.W.2d 873, 879 (Tex. 1999)         22

*Walker v. Packer,* 827 S.W.2d 833 (Tex. 1992)    20

*Western Indemnity Co. v. Murray,* 208 S.W. 696,
    698 (Tex. Comm. App. 1919)         23

*Wilson v. Monarch Life Insurance Company,*
    971 F.2d 312 (9th Cir. 1992)         37

## STATUTES AND CODES

| | |
|---|---|
| TEX. BUS. ORG. CODE Chapt. 11 | 30, 31, 32, 33 |
| TEX. BUS. ORG. CODE Chapt. 301 | 30 |
| TEX. BUS. ORG. CODE Chapt. 302 | 30 |
| TEX. BUS. ORG. CODE §11.001 | 31 |
| TEX. BUS. ORG. CODE §11.051 | 31 |
| TEX. BUS. ORG. CODE §11.052 | 32 |
| TEX. BUS. ORG. CODE §11.101 | 33 |
| TEX. BUS. ORG. CODE §301.003 | 31 |
| TEX. BUS. ORG. CODE §301.004 | 31 |
| TEX. BUS. ORG. CODE §301.007 | 30 |
| TEX. BUS. ORG. CODE §301.008 | 30 |
| TEX. BUS. ORG. CODE §302.013 | 33 |

# No. 03-15-00378-CV

# JAMES HANSEN

### v.

# LONNIE ROACH and
# BEMIS, ROACH & REED

---

## APPELLANT'S BRIEF

---

Comes now Appellant James Hansen ("Hansen") and files this Appellant's Brief.

## STATEMENT OF THE CASE

This is a legal malpractice case filed by Hansen against Lonnie Roach ("Roach") and the firm of Bemis, Roach & Reed ("the Firm"). The legal malpractice claim arises out of the failure of Roach and the Firm to timely perfect an appeal in a prior case in which Roach and the Firm represented Hansen ("the Underlying

1

Case"). The Underlying Case was a suit by Hansen against a disability insurance company for recovery on a disability office expense policy. In the Underlying Case, the trial court had granted Hansen a judgment for part of the benefits but had denied recover for a majority of the benefits payable. Hansen desired to appeal that judgment denying benefits, but Roach and the Firm did not timely perfect the appeal.

This present case was filed by Hansen against Roach and the Firm for the negligence in not perfecting the appeal. (CR 3-8). This case was tried to the court without a jury. (CR 11). The trial court granted a take nothing judgment for Roach and the Firm and filed findings of fact and conclusions of law. (CR 11, 15-17). Hansen duly and timely perfected this appeal. (CR 13)

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would be of benefit to the court in deciding the issues in this case. In order to decide whether Roach's admitted negligence in this case proximately caused damage to Hansen, the court must decide the issues that would have been

2

presented in the aborted appeal of the Underlying Case. That involves a determination of the effect of certain policy language in the disability office expense policy, and there are no Texas cases on point in making that determination. Accordingly, oral argument will assist in probing the issues related to the Underlying Case and the ultimate decision in this appeal.

## ISSUES PRESENTED

1. Whether the failure by Roach to timely perfect the appeal in the Underlying Case proximately caused loss or harm to Hansen.

2. Whether this Court would have reversed the trial court's judgment in the Underlying Case if Roach had timely perfected the appeal in the Underlying Case.

3. Did Hansen "end the business" when he surrendered his medical license or did the business continue for the period of winding up as a matter of law.

4. Did the trial courts in this case and in the Underlying Case commit error when the courts held that the coverage for disability

office expense terminated when Hansen voluntarily surrendered his medical license?

5.    Did the trial courts in this case and in the Underlying Case commit error as a matter of law when the courts held that the coverage for disability office expense terminated when Hansen surrendered his medical license since the court in the Underlying Case held that the insurance carrier had previously breached the contract of insurance?

6.    In the Underlying Case, did the disability office expense policy provide benefits for office overhead during the period of the statutory winding up of Hansen's business?

## THE RECORD

The record on appeal consists of the Clerk's Record and the Reporter's Record.   In this brief the Clerk's Record will be referenced as "CR" and the Reporter's Record will be referenced as "RR."  Since this is an appellate legal malpractice case based on the appellee's failure to properly perfect the appeal in the

Underlying Case, the court must have before it what would have been the appellate record in that case.

The Underlying Case was tried nonjury on a stipulated record. The plaintiff introduced as an exhibit in the trial court in the present case the stipulations and exhibits from the trial of the Underlying Case, along with the relevant pleadings, orders, and filed documents that would have constituted the appellate record in the Underlying Case. Those documents, along with this Court's memorandum opinion and judgment dismissing the Underlying Case for want of jurisdiction and the defendant's admissions in this case, were introduced as Plaintiff's Exhibit 1. In this brief the documents in Plaintiff's Exhibit 1 will be referenced by the appropriate tab in that exhibit ("Tab___") and the evidence in that Underlying Case will be referenced as Tab F #____.

## STATEMENT OF FACTS

Hansen is a neurosurgeon by education, training, and experience. (TAB F #4, p. 17). Hansen had developed a thriving neurosurgical practice in Austin, and practiced in a registered

professional association, Austin Neurosurgical and Spine Institute, P.A. ("Austin Neurosurgical"). Hansen was the only member of Austin Neurosurgical. (Tab F Jnt Ex. 1, Tab F #3).

To protect himself and his family in the event he became disabled in any way, Hansen purchased several disability insurance policies. (Tab F Jnt Ex 1). He purchased two basic types of policies—policies covering the loss of his personal income and policies to cover his liability for ongoing office expenses in the event of his disability. (Tab F Jnt Ex 1). The policies he purchased were all issued by The Northwestern Mutual Life Insurance Company ("Northwestern Mutual"). (Tab F Jnt Ex 1; Tab F #s 1, 2).

On June 5, 2010, Hansen suffered a disabling injury. While riding his mountain bicycle on an offroad path, his head contacted a tree limb, resulting in a cervical nerve injury. (Tab F Jnt Ex 1). That cervical nerve injury essentially destroyed the fine motor coordination in Hansen's hands. Due to that injury, Hansen could no longer perform surgery, and he has been rendered totally disabled from the time of that injury through the present.

Following that injury, Hansen submitted claims for benefits to Northwestern Mutual under his disability policies—both the loss of income policies and the office expense policies. (Tab B; Tab F Jnt Ex 1). After the elimination period, Northwestern Mutual began paying the disability income benefit, and that policy was not an issue in the Underlying case, nor is it at issue in the present case. (Tab F Jnt Ex 1). However, Northwestern Mutual denied benefits with regard to the disability office expense policies. (Tab B; Tab D; Tab F #s 1, 2). There were two disability office expense policies, each containing the same policy language. (Tab F #s 1, 2). The trial court in the Underlying Case treated the policies as one for the purposes of that case. Hansen will also treat those two policies as one for the purposes of this brief, and will refer to them as the "DOE Policy." The two DOE policies combined provided a benefit up to $25,000.00 per month, with a maximum total benefit of $600,000.00. (Tab F Jnt Ex 1; Tab F #s 1, 2).

The DOE Policy, owned by Austin Neurosurgical, provided that benefits would be payable upon the total disability of the

insured, who was identified as Hansen. The policy had a provision for termination of benefits if the insured "ends the operation of the business" while totally or partially disabled. Northwestern Mutual acknowledged that Hansen's accident rendered him totally disabled within the terms of the policy, qualifying Hansen for benefits under the DOE Policy. However, since the accident rendered Hansen unable to perform neurosurgery, Northwestern Mutual took the position that Hansen had "ended the business" and therefore Hansen's rights to benefits had terminated under the policy. (Tab D). In other words, according to Northwestern Mutual's paradoxical position, the same accident that qualified Hansen for benefits terminated his right to benefits. Northwestern Mutual denied benefits under the DOE Policy, never voluntarily paid Hansen any benefits under the DOE Policy, and took the position at the trial of the Underlying Case that Hansen was not entitled to any benefits.

Following that denial of benefits, Hansen retained Roach and the Firm to pursue recovery of the DOE Policy benefits from Northwestern Mutual. Suit was filed by Roach on Hansen's behalf

on December 23, 2010. (Tab B). Being unable to perform surgery, and there being significant costs associated with maintaining his medical license, Hansen voluntarily surrendered his medical license on April 8, 2011, while the case against Northwestern Mutual was pending. (Tab F Jnt Ex 1; Tab F # 6).

The Underlying Case was tried on stipulated facts to the court without a jury. (Tab I). Under the stipulated evidence in that case, the insurance coverage was established, along with the "termination of benefits" provision of the DOE Policy. The gross amount of coverage was established under the DOE Policy ($600,000.00), along with the maximum monthly benefit of $25,000.00 being payable in the event of liability on the part of Northwestern Mutual. The parties stipulated that if benefits were not terminated under the policy, Hansen's covered overhead expenses would exceed the maximum benefit of $25,000.00 per month for each month benefits were payable. (Tab F Jnt Ex 1). The potential recoverable damages were therefore stipulated to be the full amount of the available coverage.

Northwestern Mutual had steadfastly refused to pay DOE Policy benefits from the date of Hansen's injury based on its position that Hansen had "ended his business" on the date of his injury. However, to hedge its bet, Northwestern Mutual attempted to also argue an alternative date for termination of the business at trial—and that was the date Hansen surrendered his medical license.

Following trial on the merits in the Underlying Case, the trial court held for Hansen as to the qualification for benefits at the time of his injury, and that Hansen did not "end the business" on the date of his injury, although he could not perform surgery from that date forward. (Tab I; Tab L). However, the trial judge in the Underlying Case held that Hansen "closed the business" on April 8, 2011, when Hansen voluntarily surrendered his medical license. (Tab L). The trial court awarded Hansen DOE Policy benefits from the time of injury until the surrender of Hansen's medical license. (Tab I; Tab L). Based on that holding, the trial court in the Underlying Case granted judgment to Hansen for $201,827.96 in DOE Policy benefits, penalty interest of

$105,203.70 under §542.060 of the Texas Insurance Code, and attorney's fees of $80,000.00 through the trial of that case. (Tab I).

The District Clerk's file in the underlying case contains two Final Judgments. (Tab H; Tab I). The language of the two judgments is identical, but one judgment reflects a signing date of October 18, 2013, and the other reflects a signature date of October 21, 2013. The October 18 judgment reflects that it was filed by the clerk on October 25; the October 21 judgment reflects a filing date of October 28. There is no explanation in the file for the existence of the two judgments.

Hansen desired to appeal the denial of the DOE Policy benefits after he surrendered his medical license. In furtherance of that appeal, on November 14, 2013, Roach filed a Request for Findings of Fact and Conclusions of Law on Hansen's behalf. (Tab J). The trial court did not file findings and conclusion within twenty days of the request, so Roach properly filed a Notice of Past Due Findings of Fact and Conclusions of Law on December 9, 2013. (Tab K) The trial court then filed Findings of Fact and

Conclusions of Law on December 13, 2013. (Tab L). Roach filed Hansen's Notice of Appeal on December 19, 2013. (Tab M).

Subsequently this Court noted that the notice of appeal did not appear to be timely and requested Roach to explain. Roach did not respond to this Court's inquiry.

This Court then dismissed the appeal for lack of jurisdiction. This Court noted that the notice of appeal was due to be filed on or before November 20, 2013, but was not filed until December 19, 2013. (Tab N; Tab O). While a timely filed request for findings of fact and conclusions of law will extend the time for filing the notice of appeal, the request for findings and conclusions filed by Roach was not timely, and the notice of appeal filed by Roach was therefore late. Due to the late filing of the notice of appeal, this court lacked jurisdiction and dismissed the appeal. Due to the negligent failure of Roach, Hansen could not present his appeal to this Court, and Hansen then filed suit against Roach to recover the benefits he would have received through that successful appeal.

## SUMMARY OF ARGUMENT

The appeal of the Underlying Suit was dismissed by this Court because Roach negligently missed a jurisdictional appellate deadline. Roach and the Firm do not dispute that this failure on Roach's part was negligence—they have admitted that it was negligence. (Tab P). The issue before this Court is whether that admittedly negligent act proximately caused Hansen harm. There is no doubt that it did. The determination of this proximate cause issue is a legal question, not a factual determination. It requires the Court to decide if Hansen would have been successful on the appeal of the Underlying Case if the appeal of that case had been timely and properly perfected by Roach.

It was admitted and undisputed in the Underlying Case that Hansen had ongoing office expenses and costs in excess of $25,000.00 per month. (Tab F) Hansen had an ongoing lease obligation that he had to pay, he had debt associated with the practice that had to be paid, he had records that he had to maintain, he had personnel to pay, and he had accounts receivable that he needed to collect. (Tab F Jnt Ex 1; Tab F #s 5, 9) From a

factual standpoint, the "business" continued following Hansen's disabling injury because those functions had to be performed—the debts had to be paid and the accounts had to be collected. Simply because Hansen could no longer perform surgery did not mean that Hansen "ended the business" when the business had ongoing debts to pay, records to maintain, and accounts to collect. The undisputed facts in the Underlying Case were that the business continued in actual fact.

Hansen did not "end the business" when he surrendered his medical license. Northwestern Mutual's argument was that "the business" was Austin Neurosurgical, a professional association. A professional association can only have licensed professionals as members, and when it has no licensed professionals as members, it cannot continue to exist. Under Northwestern Mutual's argument, when Hansen surrendered his medical license on April 8, 2011, Austin Neurosurgical terminated since it no longer had any licensed professionals as members. Therefore, under that argument, Hansen "ended the business" at that time since Austin

Neurosurgical had no member who was licensed to practice medicine and no employees to perform surgery.

That argument overlooks the fact that "the business" continued to pay its obligations and collect its assets, and it ignores the fact that under the Texas Business Organizations Code the business continued in existence for the period of winding up, as a matter of law. The surrender of Hansen's medical license might be an event triggering the winding up of the professional association, but it was certainly not a complete "end" of the business. As a matter of law the business continued for the period of winding up, which is the period necessary to gather and liquidate the assets and pay the debts and liabilities of the entity. This is exactly what was happening following Hansen's surrender of his medical license. As a matter of both law and undisputed fact, Hansen did not "end the business" when he voluntarily surrendered his medical license because the business continued for the period of winding up. Hansen was therefore entitled to the unpaid DOE Policy benefits and the applicable penalty interest

through the date of the original judgment, an amount totaling $605,723.31.

An additional basis that the Underlying Case would have been reversed on appeal is that Northwestern Mutual breached the contract of insurance when it failed to pay Hansen the benefits to which he was entitled following his injury. After breaching the contract, Northwestern Mutual could not rely upon a subsequent act by Hansen as a defense to its liability on the contract.

Accordingly, the trial court in the Underlying Case erred in holding that Hansen was not entitled to recover the full coverage of the DOE benefits. If the appeal of the Underlying Case had been properly perfected by Roach, this Court would have reversed the trial court's judgment in that case and would have rendered judgment that Hansen recover the benefits that had been denied in the trial court. Roach's error in failing to timely perfect the appeal was therefore the proximate cause of Hansen's loss of $605,723.31.

# ARGUMENT & AUTHORITIES

## *Standard of Review*

In a legal malpractice suit the plaintiff must show that (1) the attorney owed a duty to the plaintiff, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred. *Alexander v. Turtur & Associates, Inc.,* 146 S.W.3d 113 (Tex. 2004); *Grider v. Mike O'Brien, P.C.,* 260 S.W.3d 49 ( Tex. App.—Houston [1st Dist] 2008, pet. den.). Defendants admitted that Roach was Hansen's attorney in the Underlying Case, so as a matter of law Roach owed Hansen the duty to exercise that degree of care, skill, and diligence that would be exercised by a lawyer of ordinary skill and knowledge under the same or similar circumstances. The defendants have acknowledged that Roach breached that duty by being negligent in failing to timely perfect the appeal in the Underlying Case.

The damages in a legal malpractice case are usually a fact issue for determination by the fact finder at trial. However, in the

present case those damages are established as a matter of law by the stipulations and judgment in the Underlying Case. It was stipulated that there was $600,000.00 in available coverage under the DOE Policy and that the maximum monthly benefit of $25,000.00 would be exceeded for each month benefits were payable. The judgment awarded $201,827.96 in benefits, leaving $398,172.04 as unpaid benefits under the policy, to which benefits Hansen was entitled under the stipulations in the event the benefits were not terminated by Hansen's surrender of his medical license. (Tab F; Tab I). That sum, plus the applicable penalty interest, are the damages in the present case, and are established as a matter of law under the record in the Underlying Case.

The only remaining element to establish in the present legal malpractice case is proximate cause. Typically, proximate cause is a fact issue in any case based on a claim of negligence. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 313-314 (Tex. 1987). However, the present case is an appellate legal malpractice case. The causation issue is whether Hansen would have been successful in the appeal of the Underlying Case to this Court but for the negligence of

Roach in failing to perfect the appeal. See *Grider v. Mike O'Brien, P.C.,* 260 S.W.3d at 55; *Jackson v. Urban, Coolidge, Pennington & Scott,* 516 S.W.2d 948, 949 (Tex. Civ. App.—Houston [1st Dist] 1974, writ ref'd n.r.e.). While proximate cause is normally a question of fact in any trial of a negligence action, appellate courts determine questions of law. Since the proximate cause issue in an appellate malpractice case is whether the party would have been successful on appeal, the proximate cause question in an appellate malpractice case should logically be a question of law and not a question of fact. The Supreme Court of Texas faced that issue in *Milhouse v. Weisenthal,* 775 S.W.2d 626 (Tex. 1989) and held that in an appellate legal malpractice case, proximate cause is a question of law for the court.

This court is therefore reviewing a legal decision by the trial court, as opposed to reviewing a factual determination of the trial court. Legal conclusions of the trial court are always reviewable by the courts of appeals, and the appellate court is not obligated to give any deference to the trial court's legal conclusions. *FFE Transportation Services, Inc. v. Fulgham,* 154 S.W.3d 84 (Tex.

2004); *Nicol v. Gonzales,* 127 S.W.3d 390, 394 (Tex. App.—Dallas 2004, no pet.). This Court reviews the trial court's conclusions of law *de novo. State v. The Evangelical Lutheran Good Samaritan Society,* 981 S.W.2d 509, 511 (Tex. App.—Austin 1998, no pet.); *Heritage Resources, Inc. v. Hill,* 104 S.W.3d 612 (Tex. App.—Fort Worth 2003, no pet.). An appellate review of a trial court's legal conclusions is not under an abuse of discretion standard, since a trial court has no discretion in determining or applying the law. *Walker v. Packer,* 827 S.W.2d 833 (Tex. 1992). The interpretation of an unambiguous contract is a question of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). Therefore, this Court must make a *de novo* determination of whether Roach's negligence was a proximate cause of loss to Hansen, including a *de novo* determination of the meaning of the contract of insurance. The trial courts' determinations in that regard by the courts in this case and the Underlying Case are not entitled to any deference.

*The Policy Language*

The DOE Policy provided that "This policy provides a monthly benefit for Covered Overhead Expense when the Insured is totally or partially disabled...." "Covered Overhead Expense" was defined by the policy as:

> ...the total of monthly expenses that are normal and customary in the continuing operation of the Insured's business as properly reported for federal income tax (FIT) purposes...

There was no question in the Underlying Case that Hansen was totally disabled within the contemplation of the policy. The parties to that case stipulated that he was totally disabled for all of the relevant time period.

The defense to Hansen's claim for benefits under the DOE Policy advanced by Northwestern Mutual was that the Benefit Termination provision of the policy applied and ended Hansen's right to benefits. That provision is as follows:

> **Benefit Termination or Adjustment.** If the insured ends the operation of the business while totally or partially disabled, benefits for Covered Overhead Expenses and Waiver of Premium will end.

The DOE Policy contained the following definition of "Business" in Section 16:

> Except as provided in sections 8.3 and 8.9, the word "business" means the Insured's business or the Insured's professional practice at the time disability starts.

The court must perform a *de novo* interpretation of those provisions to determine if Hansen would have been successful in the appeal of the Underlying Case, had such appeal been properly perfected.

## *Rules of Construction*

This Court must begin with the rules of construction to apply in the interpretation of an insurance policy. An insurance policy is a contract, and the Court interprets insurance contracts according to the general rules of contract construction. *Texas Farmers Insurance Company v. Murphy,* 996 S.W.2d 873, 879 (Tex. 1999); *Kelly-Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex. 1998). If the policy language can be given a definite or certain legal meaning, the policy is not ambiguous and the court construes it as a matter of law. *Kelly-Coppedge* at 464.

A policy of insurance is by its nature a contract of adhesion. Accordingly, a policy of insurance will be strictly construed against the insurer and in favor of the insured, and any reasonable interpretation of a policy provision must be indulged in favor of the insured and coverage. *Gulf Insurance Company v. Parker Products, Inc.,* 498 S.W.2d 676, 679 (Tex. 1973); *Western Indemnity Company v. Murray,* 208 S.W. 696, 698 (Tex. Comm. App. 1919). The rule favoring interpretation in favor of the insured and coverage is even more applicable when interpreting policy exceptions and limitations of coverage. *Barnett v. Aetna Life Insurance Co.,* 723 S.W.2d 663, 666 (Tex. 1987). The Court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not by itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Continental Casualty Co. v. Warren,* 254 S.W.2d 762, 763 (Tex. 1953); *Insurance Company of North America v. Cash,* 475 S.W.2d 912 (Tex. 1972). Applying these rules to the facts of the Underlying Case demonstrates that there was

coverage for the expenses Hansen incurred after the surrender of his medical license, and this Court would have reversed the judgment of the trial court in that case if the appeal had been properly perfected.

## *Interpretation of the Policy Language*

The policy language on which Northwestern Mutual relied was that "the insured ends the operation of the business while totally or partially disabled...." This is language purporting to limit or terminate benefits payable under the policy, and therefore, applying the settled rules of construction discussed above, that provision must be interpreted in favor of providing coverage as long as that construction is not itself unreasonable. The use of the phrase "the insured ends the operation of the business" would imply an affirmative act by the insured that not simply leads to the eventual ending of the business, but actually ends it at that time. The limitation or termination of coverage would not be applicable until the business actually ended. Likewise, the use of the term "business" must be interpreted

liberally in favor of coverage and against denial or forfeiture of benefits. The Court simply cannot adopt a narrow interpretation or application of the terms that would limit or forfeit coverage— the court must interpret the provisions to recognize coverage if reasonably possible to do so.

The "Insured's business" at the time disability started was Austin Neurosurgical. The court in the Underlying Case found that Hansen "closed his business on the date he surrendered his medical license, April 8, 2011." Hansen had not been able to render neurosurgical medical care since June 5, 2010, the date he suffered his disabling injury. The mere relinquishment of his medical license essentially changed nothing with regard to his ability to render professional services other than to mean that he could no longer even do so legally from that time, even though he had not and could not provide such services prior to that time. But "the Insured's business" was Austin Neurosurgical. The policy does not terminate benefits when that business is "closed" as found by the trial court, but when the insured "ends" the business. There is a difference between when a business "closes"

and when it "ends." The applicable definition in the Merriam Webster Dictionary of the transitive verb "close" is "to suspend or stop the operations." The applicable definition of the transitive verb "close" in the Oxford Dictionary is "cease to be in operation or accessible to the public." Austin Neurosurgical may have closed when it suspended the provision of surgical services to the public, but the DOE Policy only provides for the termination of benefits if the "insured ends" the business. The Merriam Webster Dictionary definition of the verb "end" is "to bring to an end." The Oxford Dictionary defines the verb "end" as "come or bring to a final point, finish." In order for Hansen to end the business of Austin Neurosurgical, he must bring it to a final point—bring it to an end. However, as long as it must pay its debts, owns assets, and has accounts it is collecting, it has not ended. While Hansen may have "closed" Austin Neurosurgical since it suspended the provision of medical services to the public, Hansen did not "end" the business because it had not been brought to a final point or finish, and that could not occur until all of its debts were paid and

its assets accumulated and distributed. To pay these ongoing expenses is precisely the reason Hansen purchased this coverage.

The trial court in the Underlying Case found in its sole finding of fact that "Plaintiff closed his business on the date he surrendered his medical license, April 8, 2011." (Tab L). That is not the same as a determination as to when "the insured ends the operation of the business..." under the policy. While the trial court's factual determination in that regard may be entitled to some deference, it simply does not resolve the issue of termination of coverage. That is a question of law. A business can close but still have a continuing existence for certain purposes.

The term "ends the business" is not defined in the policy and can be interpreted in more than one way. It could mean that the business ends whenever Hansen no longer performs surgery. It could mean that the business ends whenever Hansen stops having patient contact. It could mean that the business ends whenever Hansen has terminated his last employee. It could mean that the business ends when the business has collected all of its assets and/or retired all of its liabilities. It could mean that the business

27

ends whenever Hansen ceases to be a licensed physician. It could mean that the business ends when Austin Neurosurgical ceases to be an existing entity. Any one of these could be a reasonable interpretation of that term. However, a court must resolve this dispute by adopting the interpretation advanced by the insured, even if the interpretation advanced by the carrier seems a more reasonable interpretation. *Continental Casualty Co. v. Warren*, 254 S.W.2d 762, 763 (Tex. 1953); *Insurance Company of North America v. Cash*, 475 S.W.2d 912 (Tex. 1972). The court must adopt the broadest interpretation resulting in coverage and against denial of coverage. *Gulf Insurance Co. v. Parker Products*, 498 S.W.2d 676, 679 (Tex. 1973). Applying those rules of interpretation, the trial courts in the Underlying Case and in the present case incorrectly held that Hansen "ended the business" on April 8, 2011.

## *Continuation of the Business In Fact*

The evidentiary record from the Underlying Case reflects that Hansen had not yet ended the business when he surrendered

his medical license. As reflected by the joint stipulation in that case, Austin Neurosurgical had ongoing expenses and obligations that exceeded the monthly maximum benefit for the entire period of coverage. (Tab F Jnt. Ex. 1). Austin Neurosurgical had a five-year sublease from Spine Center, Inc., commencing on February 1, 2010, and expiring on July 31, 2015. (Tab F #5). Austin Neurosurgical leased 1607 square feet on a "triple net" lease beginning at the rate of $12.00 per rentable square foot, with the rental rate escalating over time to $14.00 per rentable square foot. Austin Neurosurgical also had a $758,313.51 promissory note payable to Hansen dated May 19, 2010, calling for bi-weekly payments of $23,000.00 until paid in full. (Tab F #9). Austin Neurosurgical also had ongoing employee costs. All of these costs and expenses continued past the time that Hansen surrendered his medical license. There were accounts receivable to collect, and the effort to collect those accounts was ongoing at the time Hansen surrendered his license. As a matter of undisputed fact, the business of Austin Neurosurgical had not been brought to an end, a final point, a finish, by the time Hansen surrendered his license.

## Continuation of Business Under Texas Business Organizations Code

Northwestern Mutual argued at the trial of the Underlying Case that the business necessarily ended when Hansen surrendered his medical license since a professional association can only have licensed professionals as members, and Hansen had been the only member of Austin Neurosurgical. This argument, however, overlooks the applicable provisions of the Texas Business Organizations Code. Professional associations are specifically governed by Chapters 301 and 302 of the Business Organizations Code. A professional association is an entity that must file under the Business Organizations Code, and therefore the provisions of Chapter 11 are also applicable to it.

Under §301.008 of the Business Organizations Code, an owner of a professional association who ceases to be an "authorized person" as required by Section 301.007 must promptly relinquish the person's ownership interest in the entity. Section 301.007 provides that a person may be an owner of a professional entity or a governing person of a professional limited liability

company only if the person is an "authorized person." Section 301.004 provides that a person is an "authorized person" with respect to a professional association if the person is a "professional individual," which is defined by §301.003 to be an individual who is licensed to provide in this state or another jurisdiction the same professional services as is rendered by that professional entity.

Under these provisions, when Hansen voluntarily relinquished his medical license, he ceased to be an authorized person, requiring him to relinquish his ownership interest in Austin Neurosurgical. But since Hansen was the only member of Austin Neurosurgical, that was an event requiring a winding up of the entity since it had no authorized person as an owner. Chapter 11 of the Business Organizations Code covers what happens when an event requiring the winding up of an entity occurs. Under §11.051, Austin Neurosurgical was required to wind up its business since it no longer had any owner who qualified as an authorized person. Section 11.001 defines "winding up" as the process of winding up the business and affairs of a domestic entity

as a result of the occurrence of an event requiring winding up. The winding up procedures are established in §11.052.

> (a) Except as provided by the title of this code governing the domestic entity, on the occurrence of an event requiring winding up of a domestic entity, unless the event requiring winding up is revoked under Section 11.151 or cancelled under Section 11.152, the owner, members, managerial officials, or other persons specified in the title of this code governing the domestic entity shall, as soon as reasonably practicable, wind up the business and affairs of the domestic entity. The domestic entity shall:
>
> > (1) cease to carry on its business, except to the extent necessary to wind up its business;
> >
> > (2) if the domestic entity is not a general partnership, send a written notice of the winding up to each known claimant against the domestic entity;
> >
> > (3) collect and sell its property to the extent the property is not to be distributed in kind to the domestic entity's owners or members, and
> >
> > (4) perform any other act to wind up its business and affairs.
>
> (b) During the winding up process, the domestic entity may prosecute or defend a civil, criminal, or administrative action.

Under Chapter 11 of the Business Organizations Code, the business is not "terminated" until the winding up process is completed. Section 11.052 clearly provides that the business does continue to the extent necessary to wind up its business, which in

this instance includes paying its liabilities and collecting its accounts receivable. The business is not "terminated" until it has completed the process of winding up and has filed a certificate of termination under §11.101 of the Business Organizations Code. Section 302.013 of the Code requires that the certificate of termination filed in accordance with Chapter 11 must be executed by an officer of the professional association on behalf of the association.

When Hansen voluntarily relinquished his medical license, that became an event requiring the winding up of Austin Neurosurgical because it no longer had an authorized person as a member. At that point, Austin Neurosurgical was required to cease its regular course of business (providing neurosurgical services) and begin the winding up process. Of course, Austin Neurosurgical ceased providing neurosurgical services when Hansen suffered his disabling injury. But Austin Neurosurgical did not cease to exist or terminate at that time—it continued in existence until the completion of the winding up process. As a matter of law, Hansen did not "end" the business when he

33

surrendered his medical license—by statute Austin Neurosurgical was required to continue in existence for the period of winding up. As part of the winding up process, Austin Neurosurgical had to pay its debts and gather its assets. As shown by the evidentiary record in the Underlying Case, those debts were ongoing in an amount for a period in excess of the maximum available coverage under the DOE Policy. As a matter of law, Austin Neurosurgical did not "terminate" (end) until the process of winding up had been completed and the certificate of termination filed. That had not occurred at the time Hansen voluntarily surrendered his medical license, and could not occur until the last lease payment was made in July 2015. As a matter of law, the business did not end but continued for the statutorily required period of winding up. Therefore, the trial court in the Underlying Case erred in denying DOE Policy benefits after Hansen relinquished his medical license. This Court would have reversed the trial court in the Underlying Case if Roach had not negligently failed to timely perfect the appeal.

*The "Findings of Fact"*

In the present case, the trial court filed findings of fact and conclusions of law. (CR 15-17). In Finding of Fact No. 3 the court found as follows:

> 3. The court further finds that District Judge Suzanne Covington did not abuse her discretion in finding that "Plaintiff closed his business on the date he surrendered his medical license, April 8, 2011," as referenced in the December 13, 2013 Findings of Fact of District Judge Suzanne Covington in the Underlying Case.

This is not properly a finding of fact, and it is not relevant whether or not Judge Covington abused her discretion in finding as a fact that plaintiff closed his business on that date. To begin with, a determination of whether the trial court abused its discretion is a question of law. *Jackson v. Van Winkle,* 660 S.W.2d 807, 810 (Tex. 1983). Finding of Fact No. 3 would more properly be a conclusion of law, not a finding of fact. As noted above, questions of law are reviewed *de novo* by the appellate court, and no deference is accorded the trial court's determination. The trial court does not have the discretion to incorrectly apply the law. Accordingly, this Court must make a *de novo* determination as to

whether the business "ended" on April 8, 2011. Fact Finding No. 3 in the present case has no bearing on the review that this court must perform.

The determinative issue is a question of law—when does Austin Neurosurgical "end" under the policy of insurance? The facts surrounding Hansen's injury, disability, and surrender of his medical license were undisputed—in fact, stipulated. The fact finding in the Underlying Case that Hansen "closed" the business may be evidentiary of the issue of when the business "ended", but closing the business and ending the business are, or can be, different things. The sole fact finding by the trial court in the Underlying case is therefore immaterial to the ultimate legal determination. As an immaterial fact finding, it should be disregarded. *Andrews v. Key,* 77 Tex. 35, 13 S.W. 640, 641 (1890); *Cooke County Tax Appraisal District v. Teel,* 129 S.W.3d 724 (Tex. App.—Ft. Worth 2004, no pet.). The issue is when, as a matter of law, applying the rules of interpretation and statutory law that the court must apply, did Hansen "end the business?" Applying those rules and statutes to the undisputed facts, Hansen did not

"end the business" when he surrendered his medical license. Rather the "business" continued for that period necessary to gather its assets and discharge its liabilities, both as a matter of law and as a matter of stipulated fact.

*The Defense's Cases*

In the trial court, Roach tried to avoid the conclusion that the business continued incurring Covered Overhead Expenses by citing three distinguishable cases—*Wilson v. Monarch Life Insurance Company,* 971 F.2d 312 (9th Cir. 1992); *Paul Revere Life Insurance Company v. Klock,* 169 So.2d 493 (Fla. Ct. App. 1964); and *Principal Mutual Life Insurance Company v. Toranto,* 1997 WL 279751 (N.D. Tex 1997). In those cases, the insured was denied benefits under office overhead expense policies specific to those cases. However, in each of those cases, the denial was based on the fact that the insured had sold his practice and was attempting to claim benefits for expenses <u>after</u> the sale of the practice. Not surprisingly, the courts in those cases found that expenses incurred after the insured sold the practice were not

covered by the policies. However, those results were based on the fact that the insureds sold their practices—a fact missing in the present case. Hansen did not sell his practice—he did exactly what the Business Organizations Code requires and went through the winding up process by collecting and disposing of the assets of the business and paying the liabilities of the business. In none of the cases cited by Roach in the court below did the insured go through a statutory winding up, and none of those cases even address that issue. Those cases are simply inapplicable to the case now before the Court.

*No Subsequent-Act Defense After Breach of Contract*

The fact that Hansen voluntarily surrendered his medical license in the face of Northwestern Mutual's wrongful denial of benefits could not be a defense for Northwestern Mutual in the Underlying Case. When Hansen was injured, the DOE Policy benefits were due beginning at that time. The trial court in the Underlying Case found that Hansen was entitled to those benefits and that Northwestern Mutual breached the contact when it

denied his claim. After it breached the contract, Northwestern Mutual could no longer insist that Hansen comply with the contract. When one party to a contract commits a material breach of the contract, the other party is excused from any further obligation to perform. *Mead v. Johnson Goup, Inc.,* 615 S.W.2d 685, 689 (Tex. 1981). What Northwestern Mutual was essentially arguing was that Hansen had to maintain his medical license during the entire period of coverage in order to receive the DOE Policy benefits, even though Hansen was physically incapable of performing surgery. But Hansen had to pay the ongoing office overhead expenses without the benefits that Northwestern Mutual had promised and contracted to provide to him to meet those same obligations. After breaching the contract, Northwestern Mutual could not rely on Hansen's post-breach conduct as a "fall-back" defense when its complete denial of liability failed. The trial court in the Underlying Case erred in relying upon Hansen's voluntary surrender of his medical license as a defense when that conduct occurred after Northwestern Mutual had breached the contract. This Court would not have

affirmed the denial of DOE Policy benefits to Hansen on that basis.

## CONCLUSION

This Court would have reversed the judgment in the Underlying Case if Roach and the Firm had properly perfected the appeal in that case. As a matter of law and stipulated facts, Hansen did not "end the business" of Austin Neurosurgical when he surrendered his medical license. By statute Austin Neurosurgical continued for the required period of winding up, and the stipulations in the Underlying Case establish that the winding up process actually did occur following Hansen's surrender of this medical license. Both factually and legally, the professional association continued in existence to collect its assets and discharge its liabilities.

After Northwestern Mutual had fully breached the contract by refusing to pay any benefits, Hansen was under no obligation to comply with any of the terms of the contract. If maintenance of his medical license was required for Hansen to receive the DOE

Policy benefits, Northwestern Mutual's breach of the contract relieved him of that obligation.

Accordingly, if this Court had been able to hear and decide the appeal of the Underlying Case, this Court would have reversed the trial court and rendered judgment for Hansen for the full amount of the unpaid benefits plus penalty interest. Therefore, the trial court in the present case erred in holding that Roach's admitted negligence in failing to timely perfect the appeal was not a proximate cause of Hansen's loss of the amount of that judgment.

## PRAYER

Wherefore, Hansen prays that the court reverse the judgment of the trial court and render judgment for Hansen for the full amount of his damages, which would constitute the amount of the unpaid benefits under the DOE Policy plus penalty interest from the date of Hansen's injury until the entry of the trial court's judgment in the Underlying Case, plus prejudgment

interest on that sum in this case, and for such other relief to which

he may show himself entitled.

KIDD LAW FIRM
819 West 11th Street
Austin, TX 78701
512-330-1709 (fax)

/s/Scott R. Kidd
Scott R. Kidd
State Bar No. 11385500
512-330-1713
scott@kiddlawaustin.com
Scott V. Kidd
State Bar No. 24065556
512-542-9895
svk@kiddlawaustin.com

## Certificate of Compliance with TRAP 9.4(i)(3)

This brief contains a total of 6863 words excluding the parts exempted under TRAP 9.4(i)(1), as verified by Microsoft Word for Mac. This brief is therefore in compliance with TRAP 9.4(i)(2)(B).

/s/Scott R. Kidd

## Certificate of Service

A copy of this brief has been served on John Shepperd, 909 Fannin Street, Suite 3300, Houston, TX 77010 in accordance with the Texas Rules of Appellate Procedure this 19th day of October, 2015.

/s/Scott R. Kidd

# APPENDIX

A.   Final Judgment

B.   Findings of Fact and Conclusions of Law

C.   TEX. BUS. ORG. CODE §11.052

# A

Filed in The District Court
of Travis County, Texas

JUN 1 2 2015

At _____4:10_____ P.M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-14-001213

| | | |
|---|---|---|
| JAMES HANSEN | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 98th JUDICIAL DISTRICT |
| | § | |
| | § | |
| LONNIE ROACH, AND LAW | § | |
| LAW OFFICES OF BEMIS, ROACH | § | |
| & REED | § | |
| | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## FINAL JUDGMENT

On May 27, 2015, the Court held the final trial in the above entitled and numbered cause. Plaintiff appeared in person and through his attorney, Scott Russell Kidd, and announced ready. Defendants appeared through their attorney, John R. Shepperd, and announced ready. The parties did not request a jury and all questions of fact and law were submitted to the Court for determination. The parties further stipulated to the record and exhibits for trial. Having considered the pleadings, evidence presented, argument of counsel, and applicable law, the Court concludes that judgment should be granted for Defendants.

Accordingly, it is ORDERED, ADJUDGED AND DECREED that Plaintiff, James Hansen, take nothing by this suit. It is further ORDERED, ADJUDGED, AND DECREED that this judgment disposes of all issues and parties and is an appealable final judgment. All relief not expressly granted herein is denied.

SIGNED this 12th day of June 2015.

       JUDGE PRESIDING





004076451

11

# B

Filed In The District Court
of Travis County, Texas

JUN 2 4 2015

At _____ A.M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-14-001213

| | | |
|---|---|---|
| **JAMES HANSEN** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **98th JUDICIAL DISTRICT** |
| **v.** | § | |
| | § | |
| **LONNIE ROACH, AND LAW** | § | |
| **LAW OFFICES OF BEMIS, ROACH** | § | |
| **& REED** | § | |
| | § | |
| **Defendants.** | § | **TRAVIS COUNTY, TEXAS** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On May 27, 2015, the Court held the final trial in the above entitled and numbered cause. Plaintiff appeared in person and through his attorney, Scott Russell Kidd, and announced ready. Defendants appeared through their attorney, John R. Shepperd, and announced ready.

The parties did not request a jury and all questions of fact and law were submitted to the Court for determination. The parties further stipulated to the record and exhibits for trial. The parties did not present any additional testimony or evidence at trial. The sole question before this Court was whether Defendants' failure to timely perfect the appeal of the in the underlying case, Cause No. D-1-GN-10-004459 in the 200th Judicial District Court, styled *James Hansen, M.D. v. The Northwestern Mutual Life Insurance Company* (the "Underlying Case"), proximately caused loss or harm to Plaintiff.

In response to a request from Plaintiff, the Court issues the following findings of fact and conclusions of law:

Page 1 of 3

FINDINGS OF FACT AND CONCLUSIONS OF LAW

# FINDINGS OF FACT

1. The Court adopts the parties' Joint Stipulation of Facts and all documents attached to the Appendix Supporting Joint Stipulation of Facts, filed on June 10, 2011 in the Underlying Case.

2. The parties have stipulated to the failure of Defendants to timely perfect an appeal in in the Underlying Case.

3. The Court further finds that District Judge Suzanne Covington did not abuse her discretion in finding that "Plaintiff closed his business on the date he surrendered his medical license, April 8, 2011," as referenced in the December 13, 2013 Findings of Fact of District Judge Suzanne Covington in the Underlying Case.

# CONCLUSIONS OF LAW

1. The following provisions of the insurance policy between Northwestern Mutual Life Insurance Company and Plaintiff are applicable:

### SECTION 1. GENERAL TERMS AND DEFINITIONS.
This policy provides a monthly benefit for Covered Overhead Expenses when the Insured is totally or partially disabled.

****

### 1.6 BUSINESS
Except as provided in Sections 8.3 and 8.9, the word "business" means the Insured's business or the Insured's professional practice at the time the disability starts.

****

### 1.7 COVERED OVERHEAD EXPENSE
Covered Overhead Expense is the total of monthly expenses that are normal and customary in the continuing operation of the Insured's business, as properly reported for federal income tax (FIT) purposes, with some exceptions as described below.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

****

### 3.2 MONTHLY BENEFIT FOR DISABILITY

**Benefit Termination or Adjustment.** If the insured ends the operation of the business while totally or partially disabled, benefits for Covered Overhead Expenses and Waiver of Premium will end.

2. Plaintiff's entitlement to monthly benefits ended on April 8, 2011, the date he closed his business.

3. Collection of accounts receivable did not constitute the "continuing operation of the Insured's business" within the plain meaning of the applicable provisions of the insurance policy between Northwestern Mutual Life Insurance Company and Plaintiff.

4. A timely filed appeal would not have changed the outcome in the Underlying Case. Accordingly, Defendants' failure to timey appeal did not proximately cause loss or harm to Plaintiff.

SIGNED this 23rd day of June 2015.

_____

JUDGE PRESIDING

FINDINGS OF FACT AND CONCLUSIONS OF LAW

C

# WestlawNext™

**§ 11.052. Winding Up Procedures**
Vernon's Texas Statutes and Codes Annotated    Business Organizations Code    Effective: September 1, 2013    *(Approx. 2 pages)*

**NOTES OF DECISIONS** (5)

Construction and application
Authority
Bankruptcy

Vernon's Texas Statutes and Codes Annotated
 BusinessOrganizationsCode(Refs & Annos)
  Title 1. General Provisions (Refs & Annos)
   Chapter 11. Winding up and Termination of Domestic Entity
    Subchapter B. Winding up of Domestic Entity

Effective: September 1, 2013

V.T.C.A., **Business Organizations Code** § 11.052

## § 11.052. Winding Up Procedures

Currentness

(a) Except as provided by the title of this **code** governing the domestic entity, on the occurrence of an event requiring winding up of a domestic entity, unless the event requiring winding up is revoked under Section 11.151 or canceled under Section 11.152, the owners, members, managerial officials, or other persons specified in the title of this **code** governing the domestic entity shall, as soon as reasonably practicable, wind up the **business** and affairs of the domestic entity. The domestic entity shall:

(1) cease to carry on its **business**, except to the extent necessary to wind up its **business**;

(2) if the domestic entity is not a general partnership, send a written notice of the winding up to each known claimant against the domestic entity;

(3) collect and sell its property to the extent the property is not to be distributed in kind to the domestic entity's owners or members; and

(4) perform any other act required to wind up its **business** and affairs.

(b) During the winding up process, the domestic entity may prosecute or defend a civil, criminal, or administrative action.

## Credits
Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006. Amended by Acts 2013, 83rd Leg., ch. 9 (S.B. 847), § 3, eff. Sept. 1, 2013.

## Editors' Notes

### CROSS REFERENCES

Certain procedures for approval, nonprofit corporations, see V.T.C.A., **Business Organizations Code** § 22.302.
Certain procedures relating to winding up, for-profit corporations, see V.T.C.A., **Business Organizations Code** § 21.502.
Powers of person conducting wind up, see V.T.C.A., **Business Organizations Code** § 153.503.

### LIBRARY REFERENCES

**2012 Main Volume**

**2012 Main Volume**

Corporations and **Business Organizations** ⬤⇒3089 to 3091, 3120 to 3140, 3660.